**FEE PAID**



LODGED
CLERK, U.S. DISTRICT COURT

**JAN 12 2017**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ **RS** _____ DEPUTY

*ORIGINAL*

John S. Barth
jbarth@gwi.net
Pro Se
4311 Brazilnut Ave, Sarasota, FL 34234
PO Box 88, Springvale, ME 04083
207-608-1741

FILED
CLERK, U.S. DISTRICT COURT

**JAN 19 2017**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ **RS** _____ DEPUTY

# United States District Court for the California Central District
## Western Division

------------------------------------------------------------

John Barth, |
        Plaintiff |  **2:17-CV-00274-CAS-JCx**
    vs. |
Playster Corporation, Playster International Group, |
Playster Canada Group, Playster Ltd, Playster LLC, |
Playster US, Bountyful International Ltd, Frances | **Case No. LA17CV-_____**
Gordon, 8735344 Canada Inc., Content Roots Ltd, | **COMPLAINT**
Philip Keezer, Christopher Yan, Tomasz Rakowski, | **Copyright Infringement**
Hyuna International Ltd; | **and Racketeering**
Eimhir Limited, Douglas Barber, Rochelle Birbal; | **--UNDER SEAL--**
NameCheap Inc., Richard Kirkendall, Juan Mata, |
WhoisGuard, Inc.; |
Uniregistrar Corp., Uniregistry Ltd, Frank Schilling; |
Rightside Group, Ltd, Rightside Operating Co., |
Demand Media Inc., Enom Corporate, Inc, |
Enom Inc, Whois Privacy Protection Service, Inc, |
Enom Foreign Holdings Corp, Enom World, Inc; |
Tucows Domains Inc; GoDaddy.com Llc; ICANN; |
and John Does 1-5 and Jane Does 1-5, |
               Defendants |
_____|

**NOTICE**: This complaint is filed with Application to File Under Seal, and Motion for Discovery Assistance. These steps are necessary because the defendants are highly likely to destroy evidence or move evidence and assets out of the country if they receive notice of the filing of this action or of these motions. Plaintiff will move for seizure, temporary restraining order and preliminary injunction when US agencies have identified the accounts and financial resources to be impounded.

**JURISDICTION AND VENUE**

Jurisdiction is based upon federal issues and diversity. This action is brought for violations of 17 USC §§ 101-810 (Copyright Act, including the Digital Millennium Copyright Act), 18 USC § 2319 (criminal infringement of copyright), and 18 U.S.C. §§ 1961–1968 (Racketeering Influenced and Corrupt Organizations Act or RICO), under which the defendants are subject to compensatory and treble punitive damages and criminal penalties. This Court has original jurisdiction under 28 USC §1331 (federal issue) of the claims herein of violations of these statutes of the United States, and under 28 USC § 1332 (diversity) of all claims herein, as well as jurisdiction of claims of interference with interstate commerce, as Plaintiff is a citizen of Maine, whereas all defendants are entities of other states or nations.

Venue is proper in this district under 28 USC § 1391(c)(3) because most defendants are not United States entities, and thereunder may be sued in any judicial district, and under 28 USC § 1391(b)(2), because a substantial part of the internet events giving rise to the claims occurred in any judicial district, and under 18 USC § 1965 (RICO) as any "district in which such person …transacts his affairs."

Of thirteen defendants with a registered address in the United States, eleven are in the Ninth Circuit (CA, NV, AZ, WA) with a plurality of six in the California Central District, Western Division. The only known defendant website maintenance office is also in this district; websites may now be based and operated anywhere. The Plaintiff is based in Florida and Maine, so that the Ninth Circuit, about three thousand miles away, is *forum non conveniens*. The pro se Plaintiff at age sixty-four expects difficulty also in navigating Los Angeles, but is able to appear at one hearing or trial of one or more days. The Plaintiff accepts CM/ECF filing and appearance by telephone or similar means if this does not impair representation.

**CONTENTS**

AUTHORITIES..................................................................................vi

PARTIES.........................................................................................1

STATEMENT OF CLAIMS...........................................................11

FACTS..............................................................................................16

The Plaintiff and the Property Stolen...........................................16

General Facts of Stolen Intellectual Property Sales Networks............................20

Facts of Operating Group A (Keezer, Yan, Rakowski, Gordon, Playster, et al)...25

    Operation of Website Group A in January 2016.............................26

    Operation of Website Group A in June 2016.................................27

    Operation of Website Group A in August 2016..............................27

    Facts and Relationship of Defendant Group A in August 2016........................30

Facts of Operating Group B (Barber, Birbal, Eimhir, et al).............................32

    Operation of Website Group B in August 2016..............................32

    Facts and Relationship of Defendant Group B in August 2016........................34

Table of Websites...........................................................................35

Table of Website Operator Groups................................................37

Table of Website Ownership Concealment Groups.........................................38

Facts of Websites with Concealed Owners in August 2016.............................41

Facts of Concealment Group G (Kirkendall, Mata, NameCheap, WhoIsGuard). .42

Facts of Concealment Group H (Schilling, Uniregistrar, PrivacyGuardian)..........45

Facts of Concealment Group I (Enom Inc, WPPS, et al) in August 2016............47

Facts of Registrars and ICANN in Collusion to Obstruct Prosecution................52

Summary of Fact..............................................................................54

PETITION FOR RELIEF................................................................56

Just Compensation..........................................................................56

1   **Summary**

2        This is an action to obtain compensation for damages to Plaintiff caused by

3   the defendants, by their unlawful distribution of intellectual property of which the

4   Plaintiff has the copyright. The Plaintiff has been severely injured financially by the

5   loss of proceeds of sale of his copyrighted work, due to these acts of the defendants.

6   The defendants operate blatantly piratical organizations in deliberate violation of

7   copyright law and RICO, and are subject to compensatory and exemplary punitive

8   damages and criminal penalties. The defendants have willfully stolen the property

9   and income of a generation of writers and scholars, causing possibly more damage

10   than any prior historical influence.

11   Having spent four years of professional work and having made substantial

12   investments in the planning, studying, preparation, writing, editing, reviewing,

13   massive re-editing, copy editing, print preparation, copyrighting, printing,

14   transportation, storage, extensive marketing, and sales preparation of his 185,000

15   word 550 page novel *The National Memorial*, and great effort in researching

16   unlawful sales thereof, and in defending his indisputable right to all proceeds of sale

17   thereof, Plaintiff demands substantial compensation, exemplary punitive damages,

18   and such criminal penalties as this court may deem sufficient to discourage piracy.

19   Theft and sale of intellectual property by internet pirates has caused severe losses to

20   a generation of writers and others, has caused publisher revenue losses of thirty

21   percent or more over the past fifteen years despite population increases, and may

22   soon become more difficult to trace. This case involves a combination of plaintiff

23   skills in internet engineering, legal process, literary composition and marketing,

24   which presents an opportunity for the Court to set an important precedent in the

25   areas of internet fraud, copyright violation, and collusion to obstruct prosecution. A

26   punitive precedent may protect a generation of artists from theft.

**Introduction to the Methodology of Defendants**

The defendants sell copies of stolen copyrighted products using groups of websites consisting of Marketing sites, Redirection sites, Payment sites, and Distribution sites. These websites are registered to false owners and Concealment services, and their relationships are changed frequently. The owners themselves are chains of shell corporations, non-capitalized foreign subsidiaries, and agents in foreign fraud venues, intended to conceal the ultimate owners and to obstruct prosecution and recovery, which in itself is sufficient evidence of unlawful intent.

**Jury Demand**

Trial by jury is demanded for all issues of the complaint.

1    **AUTHORITIES**

2    **Cases (referenced primarily in Memorandum of Law)**

3    **Copyright Cases**

4    1.  A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (2001)
5    2.  Arista Records LLC v. Lime Group LLC, 784 F.Supp.2d 398 (S.D.N.Y. 2011)
6    3.  EMI Music NA v. Escape Media, GrooveShark, USDC NY SD (2015)
7    4.  Fonovisa Inc. v. Cherry Auction, Inc. 76 F.3d 259 at 263-64 (9th Cir. 1996)
8    5.  Gershwin Publishing Corp v. Columbia Artists, 443 F.2d 1159 (2d Cir. 1971)
9    6.  Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 566-67 (1985)
10   7.  Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148 (9th Cir. 1986)
11   8.  MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764 (2005)
12   9.  Twin Peaks Productions, Inc. v. Publishing Int'l, 996 F.2d 1366 (2d Cir. 1993).
13   10. UMG v. GrooveShark, NY Sup Ct (2010)
14   11. U.S. v. Kim Dotcom et al, 1:12-cr-3 (E.D. Va.)(2015)
15   12. Worldwide Church of God v. Phila. Church, 227 F.3d 1118 (9th Cir. 2000)
16   13. eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058 (N.D. Cal. 2000)
17   14. Concrete Mach. Co. v. Classic Lawn Ornaments, 843 F.2d 600 (1st Cir.1988).

18   **Racketeering Cases**

19   30. Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir. 1988)
20   31. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990)
21   32. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497 (1985)
22   33. United States v. Kim Dotcom, US DC VA (ED) (pending)

23   **Statutes of the United States**

24   17 USC §§ 101-810 Copyright Act, with Digital Millennium Copyright Act
25   18 USC § 101 No Electronic Theft Act (NET).
26   18 USC §§ 1961–1968 Racketeer Influenced Corrupt Organizations Act (RICO)
27   18 USC § 2319 Criminal copyright infringement per 17 USC §506(a)(1)(A)

1    **PARTIES**

2         Due entirely to the extensive arrangements of the defendants to obstruct

3    prosecution and evade jurisdiction and taxes, through the use of networks of shell

4    corporations and Concealment Services with interlocked directors and agents in

5    foreign fraud venues, it is necessary to join numerous related entities prior to

6    discovery, after which parties may be dropped or joined.

7    1. Plaintiff John S. Barth, jr. is the author of a copyrighted novel titled *The*

8        *National Memorial*, hereinafter "property of Plaintiff," or "subject property."

9        Plaintiff is represented Pro Se.

10   **Defendant Group A**

11   2. Defendants Philip Keezer a/k/a Philip J Keezer, Christopher Yan a/k/a

12       Christopher W. Yan, Tomasz Rakowski, Frances Gordon a/k/a Frances Ann

13       Gordon, Playster International Group, Playster Canada Group, Playster Ltd,

14       Playster US, Playster Corporation, Playster LLC, 8735344 Canada Inc.,

15       Bountyful International Ltd, and Content Roots Ltd. a/k/a Content Roots, and

16       other persons or entities to be named, are the owners and/or operators of stolen

17       property sales "website group A" detailed under Facts, and their agents and

18       accomplices, and are referred to collectively hereinafter as "defendant Group A"

19       or "operating Group A."

20   3. Defendant **Philip Keezer** a/k/a Philip J Keezer a/k/a Philip Joseph Keezer claims

21       to be a national of Canada, DOB 1978, address 258 rue Beacon Rd, Kirkland,

22       Québec H9J 2G4 Canada. Keezer is listed as the director of defendants **Playster**

23       **International Group, Playster Canada Group, 8735344 Canada Inc** (see

24       opencorporates.com), **Playster Limited** (with defendant Gordon, Exhibit A2,

25       see companycheck.co.uk, where he claims a UK address), defendant **Bountyful**

26       **International Ltd.**, DailyHappiness Ltd (with defendant Gordon), Jtunes Media

1   Ltd (with defendant Birbal, defendant Group E), Time Game Ltd (with defendant

2   Birbal),  StreamIon Ltd, Page Machine Ltd, Musilo Ltd, Media Spring Ltd, Lang

3   Lio Ltd, and GameZoo Ltd, and other shell corporations. Additional entities and

4   defendants may be joined. Keezer owns several websites directly (Exhibit R14).

5   4.  Defendant **Christopher Yan** a/k/a Christopher Wilhelm Yan a/k/a Christopher

6   W. Yan a/k/a Christophe Yan of 10964 Wellworth Ave #202, Los Angeles, CA

7   90024, is a VP of **Playster** and director of defendant **Content Roots Ltd** (with

8   defendant Gordon). Defendant Yan claims in the filings of defendant Content

9   Roots Ltd to be a United States citizen and resident born in both November and

10   May 1973, and falsely lists its office address as his residence. He has long been

11   involved in collecting and marketing stolen "content" through websites.

12   5.  Defendant **Tomasz Rakowski** is claimed to be CTO Officer of **Playster** (Exhibit

13   A3), responsible for its technology of sale of the subject property and its

14   concealment thereof.

15   6.  Defendant **Frances Gordon** a/k/a Frances Ann Gordon claims to be a British

16   national, DOB 1954, address Trevor Cottage, The Green, Horsted Keynes,

17   Haywards Heath, West Sussex, RH17 7AW, UK, and a Director of **Playster**

18   **Limited** (with defendant Keezer, Exhibit A2)**,** and a Director of **FunFusion Ltd**

19   (with defendant Barber, defendant Group B). Gordon is apparently substantially

20   responsible for the dodgy network of shell corporations intended to conceal

21   proceeds, evade taxes, and deflect responsibility of defendants for crime and tort.

22   7.   Defendant **Playster International Group** is a Canada corporation (file

23   1169831196) which claims an office at 2 Place Ville-Marie, Suite 100, Montréal,

24   Québec H3B5G9 Canada and local agent GWBR, L.L.P., 1001-1 car.

25   Westmount, Westmount Québec H3Z 2P9 Canada.

2

1   8. Defendant **Playster Canada Group** is a Canada corporation (file 1169830800)

2       with office at 3333 Graham Blvd Ste 400, Montreal, Québec H3R 3L5 Canada,

3       and the same local agent and Director as **Playster International Group**.

4   (see Business Register of Quebec at

5   http://www.registreentreprises.gouv.qc.ca/en/sepf/services_ligne/default.aspx).

6   9. Defendant **8735344 Canada Inc** is a Canada corporation (no. **873534-4**,

7       business no. 833609373RC0001, see www.ic.gc.ca/app/scr/cc/Corporations

8       Canada) which claims an office at the same address as **Playster Canada Group**,

9       and another at the same address of **Playster International Group,** and claims

10      defendant **Keezer** as its Director. There are five more "corporations" whose

11      names consist of the seven-digit corporation number followed by "Canada Inc"

12      all having defendant Keezer as their director and the same office address as

13      **Playster Canada Group** and **Playster International Group** (see

14      www.companiesofcanada.com). Defendant **8735344 Canada Inc** is the sole

15      owner of defendant **Playster Limited**, and received ownership of the trademark

16      **Playster** from defendant **Bountyful International Ltd** in 2016. It is a privately-

17      held corporation subject to the Canada Business Corporations Act.

18  10. Defendant **Bountyful International Ltd** is a Barbados company (no. 37852 of

19      the Corporate Affairs Office of Barbados) listing the address Marine Lodge,

20      Corner Of Balmoral Gap, Hasting Main Road, Christ Church, Barbados. It is the

21      sole owner of defendant **Playster Limited**, and assigned the trademark **Playster**

22      to defendant **8735344 Canada Inc** on 5/20/2016. (see

23      http://www.caipo.gov.bb/site/index.php/search/search-our-database/article/89355).

24  11. Defendant **Hyuna International Ltd** is a Barbados "law firm" (Corporate

25      Affairs Office of Barbados) with the same address as defendant **Bountyful**

1    **International Ltd** (Exh. A10). It registered the trademark **Playster** and assigned

2    it to defendant **Bountyful International Ltd**.

3    12. Defendant **Playster Corporation** is a Delaware corporation (no. 5547401)

4    registered with ICANN as the owner of **Playster.com**, claiming an office at 77

5    Water Street Suite 821, New York NY 10005, and a Delaware agent American

6    Incorporators Ltd, 1013 Centre Road, DE 19805. Delaware is the most infamous

7    corporate prosecution obstructor in the US, and has historically made much of its

8    state budget from the concealment of corporate information from plaintiffs. The

9    website names "**Playster.com**," "Playster.me," "Playster.org,"

10   "Playster.systems," and "Playster.us" are all registered with ICANN as owned

11   by **Playster Corporation**. It is constructively another Keezer entity.

12   13. Defendant **Playster LLC** is a Delaware LLC (no. 5446971) with the same local

13   agent as the above **Playster Corporation**. This name is used on Playster.com to

14   deceive users as to the legal entity responsible for its unlawful activity. It is

15   constructively a Keezer entity.

16   14. Defendant **Playster US** is a name not traceable to a legal entity, but registered as

17   such with the FCC in application 6/21/2016 for wireless registration number

18   FRN 0025669490 for a third-party tablet product with FCC ID 2AIS8-

19   PLAYSTER8. The FCC application, which claims that "Playster US" is a

20   foreign entity, was apparently fraudulent (see fccid.io/2AIS8).

21   15. Defendant **Playster Limited** is a UK company registered with the UK

22   Companies House (no: 09065373, see companycheck.co.uk), listing as Directors

23   defendant **Philip Keezer** and defendant Frances Gordon, and office at 43

24   Temple Row, Birmingham B2 5LS, UK. It most recently reported no parent

25   company, no charges, no activity, no employees, and a negative net worth. Seven

26   county court judgments against it are reported in the past six years. It appears to

4

1    be a local shell corporation used to obstruct prosecution. It is solely owned by

2    defendant **Bountyful International Ltd**.

3    16. Defendant **Content Roots Ltd**. a/k/a Content Roots is a dormant Private Limited

4    Company (Companies House of UK no. 08856245), claiming an office at 2

5    Wellington Place, Leeds, West Yorkshire, LS1 4AP, UK, and Directors

6    defendant **Yan** and defendant **Gordon** (see companycheck.co.uk). It lists itself

7    as "Content Roots" as the ICANN registered owner of **Contentroots.com**. It

8    reported no parent company, subsidiaries, employees, assets, or net worth in

9    2015. The same address houses a gambling operation Sky Betting and Gaming.

10   17. The internet websites "Playster.com," "ReadEBook4Free.net," "Ebook-

11   Finder.com," "UrBookDownload.com," "GleekPlay.com," "EzineCenter.com,"

12   "ElibrariGo.com," "MyEbookE.com," "EastStemCell.com," "NdUkDigital.com"

13   and other websites to be named, which sell property of Plaintiff which

14   defendants have stolen or unlawfully copied, are referred to collectively herein as

15   the stolen intellectual property sales "website group A."

16   **Defendant Group B**

17   18. Defendants Douglas Barber, Rochelle Birbal, and Eimhir Limited, of 538 West

18   21st St. #77490, Houston, TX 77008-3642. and 72 High Street, Haslemere,

19   Surrey, GU27 2LA, UK, and other entities to be named, are the owners and/or

20   operators of stolen property sales "website group B" and their agents and

21   accomplices, referred to collectively herein as defendant or operating "Group B."

22   19. Defendant Douglas Barber is listed as the director of Eimhir Ltd (with defendant

23   Birbal) and FunFusion Ltd. (with defendant Gordon), a national of Canada, at

24   Woodgate Cottage, London Road, Danehill, Haywards Heath, West Sussex,

25   RH17 7HS, UK, the address of FunFusion Ltd (see companycheck.co.uk).

20. Defendant Rochelle Birbal claims to be a British national DOB 1988, address 93 Kimberley Rd, London, N18 2DW UK, a director of Eimhir Ltd (with defendant Barber), Jtunes Media Ltd (with Group A defendant Keezer), TimeGame Ltd. (with defendant Keezer), OldCotes Media Ltd, and Play Web Ltd.

21. Defendant Eimhir Limited is a UK private limited company registered with the UK Companies House (no: 07979440, see companycheck.co.uk, Exhibit B10) claiming offices at 20 Primrose Street Level 12, The Broadgate Tower, London EC2A 2EW GB, and 72 High Street, Haslemere, Surrey, GU27 2LA, UK.

22. The internet websites "Book-Me.Net," "TzarMedia.com," "LilPlay.com," and other websites to be named, which sell or have sold property of Plaintiff which defendants have stolen or copied, are referred to collectively hereinafter as the stolen property sales "website group B."

**Defendant Group G**

23. The internet websites "ReadEBook4Free.net," "EBook-Finder.com" and other websites to be named, which sell or have sold property of Plaintiff which defendants have stolen or unlawfully copied, are referred to collectively hereinafter as the stolen property sales "website group G."

24. Defendants "WhoIsGuard, Inc." A/K/A WhoIsGuard, NameCheap Inc., Richard Kirkendall, Juan Carlos Mata, and other persons and/or entities to be named, are the owners of, or the owners of ownership Concealment Services acting as agents and accomplices of the owners of stolen property sales "website group G" and their agents, accomplices, and employees, and are referred to collectively hereinafter as "defendant Group G" or "concealment Group G."

25. Defendant **WhoIsGuard, Inc.**, is the owner name registered of WhoisGuard.com and the owner of, or the owner of Ownership Concealment

1 services acting as agents and accomplices of, stolen property sales "website

2 group C." After several lawsuits against them, defendant WhoIsGuard, Inc

3 engaged defendant lawyer Mata in Panama as agent to obstruct prosecution.

4 26. Defendant **NameCheap Inc. d/b/a WhoIsGuard Inc.** is a Delaware corporation

5 with office at 11400 West Olympic Blvd., Ste 200, Los Angeles, CA 90064, and

6 is former owner, reseller, and indirect owner of WhoisGuard.com (IANA 1068).

7 27. Defendant Richard Kirkendall is the owner and CEO of NameCheap Inc., and

8 thereby the ultimate owner of, or the ultimate owner of Concealment services

9 acting as agents and accomplices of, stolen property sales "website group G."

10 28. Defendant Juan Carlos Mata ("killer"), is registered as the agent of defendant

11 WhoIsGuard, Inc, listing an office as Mata & Pitti, Abogados, Ricardo Arias

12 Street, Advanced Tower, 1st Flr, Panama City, Panama, PO Box 0823-01310.

13 **Defendant Group H**

14 29. The internet websites "MyEBookE.com," "Book-Me.net," and other websites to

15 be named, which have sold property of Plaintiff which defendants have stolen,

16 are referred to collectively herein as the stolen property sales "website group H."

17 30. Defendants Frank Schilling, Uniregistrar Corporation, Uniregistry Corp. d/b/a

18 Uniregistry, "Privacy-Link.com" A/K/A Privacy Link, "PrivacyGuardian.com,"

19 "PrivacyGuardian.org" and other persons and/or entities to be named, are the

20 owners of, or the owners of Concealment Services acting as accomplices of the

21 owners of, stolen property sales "website group H" and members of "website

22 group A" and their accomplices, agents, and employees, and are referred to

23 collectively hereinafter as "defendant Group H" or "concealment Group H."

24 31. Defendant **Privacy Guardian** a/k/a "Privacydotlink Customer 402475" claims

25 addresses of 1928 E. Highland Ave. Ste F104, PO Box 255, Phoenix AZ 85016

26 and PO Box 30485, Seven Mile Beach, Grand Cayman Ky1-1202 KY.

1   32. Defendant **Uniregistry Corporation d/b/a Uniregistry** is registered in Cayman

2       Islands by defendant **Frank Schilling** with office Governors Square, Unit 3-110,

3       PO Box 1361, 23 Lime Tree Bay Ave, Grand Cayman, Cayman Islands KY1-

4       1108, website **UniRegistry.com**, and officer defendant Schilling. It registered

5       the same address and officer (IANA no. AS63363) to host Uniregistry.com,

6       Uniregistry.info, Uniregistrymarket.link, and Uniregistry-dns.com.

7   33. Defendant **Uniregistrar Corporation d/b/a Uniregistry** is an ICANN registrar

8       as of 2013 (IANA ID: 1659) with the same address and officer as **Uniregistry**

9       **Corporation** and using domain Uniregistry.com. It registered the same address

10      & officer with IANA (no. AS63363) to host Uniregistry.com, Uniregistry.info,

11      Uniregistrymarket.link, Uniregistry-dns.com.

12  34. Defendant **Uniregistry Inc**. became a subsidiary in 2014, with office at 2161

13      San Joaquin Hills Rd, Newport Beach, CA 92660 to house a support group.

14  35. Defendant **Frank Schilling** claims to be a resident of Cayman Islands with the

15      same addresses as Uniregistry Corporation and Uniregistrar Corporation, with an

16      undisclosed residence in Cayman Islands, probably on "my beach" Seven Mile

17      Beach, Grand Cayman island. Schilling is the sole incorporator and officer of

18      both corporations. Defendant Schilling owns more than five percent of defendant

19      **Rightside Group, Ltd**, a/k/a Rightside Operating Co which owns defendant

20      Enom and lists on its website RightSide.co as its "brands" Enom wholesaler,

21      Name.com registrar, and Rightside Registry "top level domain" dealer.

22  **Defendant Group I**

23  The internet websites "r867qq.net" and "qertewrt.com" and other websites to be

24  named, which are used to obscure connections between websites that have sold

25  property of Plaintiff which defendants have stolen, are referred to collectively herein

26  as stolen property sales "website group I."

8

36. Defendant **Rightside Group, Ltd** a/k/a Rightside Operating Co with offices at 5808 Lake Washington Blvd NE, Ste 300, Kirkland, WA lists on its website RightSide.co its "brands" defendant Enom wholesaler, Name.com registrar, and Rightside Registry "top level domain" dealer.

37. Defendants **Enom** and **Whois Privacy Protection Service, Inc**, and other persons and/or entities to be named, are the owners of, or the owners of ownership Concealment Services acting as accomplices of, stolen property sales "website group I" and their accomplices and agents, referred to collectively herein as "defendant Group I" or "concealment Group I."

38. Defendant **Demand Media, Inc.** is a Washington corporation with its principal place of business in Los Angeles, d/b/a **Enom** d/b/a **Whois Privacy Protection Service a/k/a Whois Privacy Protection Service, Inc** includes **Enom Inc**. and **Enom Foreign Holdings Corporation**, Washington corporations listing offices at 5808 Lake Washington Blvd. NE, Kirkland WA 98033, **Enom, Incorporated**, a Virginia corporation (VA Corporation Comm. ID F1730987, DCN 1410145581), **Enom Corporate, Inc**. and **Enom World, Inc**., Nevada corpprations (NV Dept of State USNV20061487579 and USNV20061487607) listing offices at CSC Services Of Nevada, Inc., 2215-B Renaissance Dr, Las Vegas, NV 89119, and other entities to be named, hereinafter "**Enom**."

39. Defendant **Enom Inc**. claims at times to be defendant **Whois Privacy Protection Service, Inc**. (herein "**WPPS**") with address PO Box 639, Kirkland WA 98083. **WPPS** may be a fictitious name used fraudulently to obstruct prosecution. Defendant **Enom** is a domain name registrar licensed by defendant ICANN to register the owners of domain names.

9

1   40. Defendant **Tucows Domains Inc.** ("Tucows") d/b/a **Contact Privacy Inc.,** 96

2        Mowat Ave, Toronto ON M6K 3M1 CA is a domain name registrar licensed by

3        defendant ICANN to register the owners of domain names.

4   41. Defendant **GoDaddy.com, LLC** ("Godaddy") 14455 N Hayden Rd Ste 226,

5        Scottsdale, AZ 85260, d/b/a **risqi jeky** (gejayeb rt 04 rw 46, maguwoharjo jawa

6        tengah 55282 ID, a non-existent address in Java, Indonesia) is a domain name

7        registrar licensed by defendant ICANN to register the owners of domain names.

8   42. Defendant **Onlinenic Inc** ("Onlinenic") d/b/a Domain ID Shield Service Co. Ltd

9        (5/F Hong Kong Trade Centre, 161-167 DesVoeux Road Central, Hong Kong,

10      HK 999077 CN) is a domain name registrar licensed by defendant ICANN to

11      register owners of domain names.

12   **Defendant ICANN**

13   43. Defendant ICANN, with office at 12025 Waterfront Drive, Suite 300, Los

14      Angeles, CA 90094, is the Internet Corporation for Assigned Names and

15      Numbers created by the NTIA (National Telecommunications and Information

16      Administration), which is required to permit public access to registration

17      information, including the real name and contact information of the registrant

18      (owner of the domain name). It contracts with private entities to serve as domain

19      name "registrars" to register the owners of domain names.

20   **Other Defendants to be Named**

21   44. Defendants John Does 1-5 and Jane Does 1-5, in any number are further owners,

22      agents, accomplices, and other entities to be identified, involved in the above

23      activities of copyright infringement and its facilitation, or the concealment of

24      entities responsible, or who have handled funds or assets in connection

25      therewith.

1  **STATEMENT OF CLAIMS**

2                                   **COUNT I**

3  The defendant owners, agents, employees, and related entities of stolen intellectual

4  property sales organizations, including Philip Keezer, Christopher Yan, Frances

5  Gordon, Playster International Group, Playster Canada Group, Playster Ltd, Playster

6  US, Playster Corporation, Playster LLC, 8735344 Canada Inc., Bountyful

7  International Ltd, and Content Roots Ltd a/k/a Content Roots, and other persons

8  and/or entities to be named (defendant group A) and defendants Douglas Barber,

9  Rochelle Birbal, and Eimhir Limited, and others to be named (defendant group B),

10  and John Does 1-50 and Jane Does 1-50, operate or facilitate stolen property sales

11  websites groups hereinafter identified as website group A and group B. These

12  defendants operate blatantly piratical organizations which have stolen and sold

13  digital copies of intellectual property, an activity that has severely depressed and

14  prevented the sale of legitimate copies thereof, and have thereby stolen the income

15  of the Plaintiff and a generation of writers, musicians, and others in the arts, and

16  may have caused more damage to the arts than any other influence in the history of

17  Western civilization.

18        The defendants sell copies of stolen copyrighted materials using groups of

19  websites consisting of Marketing sites, Redirection sites, Payment sites, and

20  Distribution sites, whose relationships are changed frequently. These websites are

21  registered to false owners and ownership Concealment Services (Count II). The

22  defendants include networks of shell corporations, foreign subsidiaries, interlocked

23  directors, and lawyers in foreign fraud venues, all intended to evade taxes, launder

24  revenues, and obstruct prosecution by complicating jurisdictions and concealing the

1    ultimate owners, which in itself is evidence of criminal intent. The relationship and

2    identity of these Concealment Entities is also changed frequently.

3          These acts of the defendants are in violation of the Copyright Act (17 USC §§

4    101-810) and the Racketeering Influenced and Corrupt Organizations Act (RICO,

5    18 USC §§ 1952–1968), and corresponding treaties and statutes of foreign powers,

6    and are thereby subject to compensatory and exemplary punitive damages as well as

7    criminal penalties.

8          The defendants have sold copies of the Plaintiff's copyrighted novel *The*

9    *National Memorial*, the product of four years of professional labor and substantial

10   investments in planning, studying, preparation, writing, editing, reviewing, massive

11   re-editing, copy editing, print preparation, copyrighting, printing, transportation,

12   storage, review preparations, book contest preparation, travel, extensive marketing,

13   and sales preparation, and great effort in researching unlawful sales thereof, and in

14   defending his right to the proceeds of sale thereof.

15         At all times material to this action, each of the defendants of Defendant

16   Groups A and B, was the agent, servant, employee, partner, alter ego, subsidiary, or

17   joint venturer of the other defendants of that Defendant Group, and the acts of each

18   such defendant were in the scope of such relationship, and in acting and failing to

19   act as alleged in this Complaint, each such defendant acted with the knowledge,

20   permission, and consent of each of the other such defendants of that Defendant

21   Group, and each such defendant aided and abetted each of the other such defendants

22   of that Defendant Group in the acts and omissions alleged in this Complaint.

23         The said violations were done with full *knowledge* of the injury done, *without*

24   *permission* of the Plaintiff, with *intent to deprive* the Plaintiff of the said property

25   and income therefrom, and have *caused injury* to the Plaintiff in the loss of his

26   efforts of four years and his income from the sale of intellectual property, and costs

1  of prosecution, for which Plaintiff demands full compensation. Plaintiff further

2  demands exemplary punitive damages, and such criminal penalties as this court may

3  deem sufficient to discourage such piratical operations in the future.

4  The facts, exhibits, and argument whereof are listed hereunder.


5  Fact paragraphs:     Facts 2-22 (parties); 57-92 (acts); Table of Websites;
6                       Table of Operators; 93-98 (related websites);
7                       116,123 (retaliation sites); 136-140 (summary)
8  Exhibits:            Group A: A1, A4-5, A30-A32, A41-A47, A60, G42, G43
9                       N2-N7, N9-N12, R16 (N= Notification, R= Registration)
10                      Group B: A45, B10-B12, B40-B42, N13-N15, R09
11 Petition for Relief: Paragraphs 141-148
12 Violations of Law:   17 USC §§ 101-810 Copyright Act including DMCA
13                      18 USC §§ 1952–1968 Racketeer Influenced Corrupt Org's Act
14                         These claims are brought under 18 USC §§ 1962 (c) and (d)
15                      18 USC § 2319 Criminal copyright infringement
16                      17 USC § 506(a)(1)(A)


17                              **COUNT II**

18 The defendant providers of website ownership Concealment Services, including

19 Richard Kirkendall, Juan Carlos Mata, NameCheap Inc., WhoisGuard, Inc., and

20 others to be named (Defendant Group G), and Frank Schilling, Uniregistrar Corp.,

21 Uniregistry Ltd, and others to be named (Defendant Group H), and Enom Inc, Enom

22 Foreign Holdings Corporation, Enom, Incorporated, Enom Corporate, Inc, Enom

23 World, Inc, (hereinafter collectively "Enom"), Whois Privacy Protection Service,

24 Inc d/b/a Whois Privacy Protection Service (hereinafter "WPPS"), and others to be

25 named (Defendant Group I), Tucows Domains Inc, GoDaddy.com Llc, Onlinenic,

26 ICANN, and John Does 1-50 and Jane Does 1-50, willfully act as principals and/or

27 accessories in tort and willfully obstruct justice by operating or colluding with

13

1  Concealment Services, or accepting non-existent or non-performing entities as

2  internet domain name registrants or Concealment Service registrants, to hide from

3  victims the ownership of websites that sell stolen copyrighted materials ("pirates"),

4  and refusing to identify those owners upon request as required by their ICANN

5  licenses, further injuring victims by leaving them no recourse but legal action or

6  WIPO complaints to compel identification of the pirates.

7      Because the pirates require these Concealment Services as an instrument of

8  tort, because Concealment Services profit by willfully subjecting the victims of

9  piracy to protracted injury and obstruction of process by refusing to identify the

10 pirates upon request as required, because Concealment Services openly oppose and

11 campaign against requirements to report the identity of pirates, and because these

12 "services" also conceal their own identity behind chains of shell corporations,

13 foreign subsidiaries, interlocked directors, and lawyers creating false offices in

14 foreign fraud venues, all of which is evidence of their criminal intent, these services

15 *act as principals* in the crime and tort of the intellectual property pirates (Count I).

16     These acts of the defendants are in violation of the Copyright Act (17 USC §§

17 101-810) and the Racketeering Influenced and Corrupt Organizations Act (RICO,

18 18 USC §§ 1961–1968), and are thereby subject to compensatory and punitive

19 damages as well as criminal penalties.

20     These defendants are accessories and principals in the unlawful sale of copies

21 of the Plaintiff's copyrighted novel *The National Memorial*, the product of four

22 years of professional labor and substantial investments, in planning, studying,

23 preparation, writing, editing, reviewing, re-editing, copy editing, print preparation,

24 copyrighting, printing, transportation, storage, review and contest preparation,

25 travel, extensive marketing, sales preparation, and great effort in researching

26 unlawful sales thereof, and in defending his right to the proceeds of sale thereof.

14

1        At all times material to this action, each of the defendants of Defendant

2    Groups B, G, H, and I, was the agent, servant, employee, partner, alter ego,

3    subsidiary, or joint venturer of each other defendant of that Defendant Group, and

4    the acts of each such defendant were in the scope of such relationship, and that in

5    acting and failing to act as alleged in this Complaint, each such defendant acted with

6    the knowledge, permission, and consent of each other such defendant of that

7    Defendant Group, and each such defendant aided and abetted each other such

8    defendant of that Group in the acts and omissions alleged in this Complaint.

9    The said violations were done with full *knowledge* of the injury done, *without*

10    *permission* of the Plaintiff, with *intent to deprive* the Plaintiff of the said property

11    and income therefrom, and have *caused injury* to the Plaintiff in the loss of his

12    efforts of four years and his income from the sale of intellectual property, and costs

13    of prosecution to obtain relief, for which Plaintiff demands full compensation.

14    Plaintiff further demands exemplary punitive damages, and such criminal penalties

15    as this court may deem sufficient to discourage such piratical operations in future.

16    The facts, exhibits, and argument whereof are listed hereunder.

| | | |
|---|---|---|
| 17 | Fact paragraphs: | Facts 23-44 (parties); 93-135 (acts); Table of Websites; Table of |
| 18 | | Operators; 116,123 (retaliation sites); 136-140 (summary) |
| 19 | Exhibits: | Group G: A41-A42, G1-G2, G5-G7, N5,8, N12-N13, R01, R05 |
| 20 | | Group H: N2-N7       (N= Notification, R= Registration) |
| 21 | | Group I: A42-A43, A47, B40-B41, I10, I30-I31 |
| 22 | Petition for Relief: | Paragraphs 141-148 |
| 23 | Violations of Law: | 17 USC §§ 101-810 Copyright Act including DMCA. |
| 24 | | 18 USC §§ 1961–1968 Racketeer Influenced Corrupt Org's Act |
| 25 | |     These claims are brought under 18 USC §§ 1962 (c) and (d) |
| 26 | | 18 USC § 2319 Criminal copyright infringement |
| 27 | | 17 USC §506(a)(1)(A) |

1   **FACTS**

2   **The Plaintiff and the Property Stolen**

3   45. Plaintiff John S. Barth, jr. (son of the National Book Award winning novelist

4       John Barth) is the author of a copyrighted novel titled *The National Memorial*,

5       hereinafter "property of Plaintiff." The novel is a fictionalized account of the

6       actual experiences of the Plaintiff in attempting to found a college preparatory

7       school to sponsor thousands of orphans in the developing nations. The work

8       consists of about 185,000 words, 54 chapters, and 543 pages.

9   46. The Plaintiff is ordinarily employed as a software engineer at a rate of $70 net

10       hourly (Exhibits available) or $140,000 annually, when not involved in charitable

11       activity or novel writing. The Plaintiff's engineering work is primarily with

12       control systems, but he has considerable knowledge of internet and web systems,

13       as well as considerable legal knowledge in the context of his charity work. This

14       unusual combination of circumstances makes the present lawsuit an unusual

15       opportunity for the Court to set an important precedent in the areas of internet

16       fraud, copyright violation, and collusion to obstruct prosecution.

17   47. Writing of the above novel required about three years of professional labor,

18       concentrated into two calendar years of labor exceeding 60 hours per week. This

19       labor consisted of months of intensive study of writing; months of extremely

20       detailed planning, studying, and preparations; months of writing the first draft;

21       many months of editing, reviewing, massive re-editing, and copy editing; months

22       of print preparation, copyrighting, printing, transportation, and storage. In

23       addition, more than one year's labor was required for publishing strategy, market

24       research, review preparations, book contest preparations, travel, extensive

1    marketing, publisher website creation, sales preparation, and presentation on

2    Amazon, Google, and Barnes & Noble websites. Voluminous records of these

3    efforts are available, including manuscripts, typescripts, editor reviews, extensive

4    editing and revision notes, numerous revisions, receipts for expenses, travel

5    records, printer communications, importation records, and extensive

6    communications with reviewers and book contest organizers.

7    48. The subject work was received for copyright on 7/24/2014 at 4:04PM, and the

8    Library of Congress Control Number 2014913542 was assigned on 7/28/2014 at

9    15:04, and is printed on the title page reverse side of all editions of the subject

10   work. The ISBNs assigned were 978-0-9909398-0-1 for the hardback, 978-0-

11   9909398-1-8 for paperbacks, and 978-1-4993575-9-2 for the Amazon

12   paperback. All versions including the PDF have the copyright, LCN, and one or

13   more of the ISBNs on this page (Exhibit Reg 06). No copyrights or use licenses

14   of any kind have been granted, and no requests for copyright or licensed use

15   have been received by the Plaintiff or his publishing company The Boston Press,

16   whose address is listed in all editions of the subject work. This constitutes

17   constructive notice to all persons under 17 USC §205(c) of exclusive copyright

18   under 17 USC §106, and that the Plaintiff is the current copyright holder.

19   Therefore all commercial copying thereof is in bad faith.

20   49. The copyright of the Plaintiff is accessible on-line at www.copyright.gov and is

21   the first item resulting from a search for title "National Memorial" (Exhibits Reg

22   01, Reg 02) and also appears in the list of works by authors of similar name

23   (Exhibit Reg 03). No other copyrighted works exist of similar name, by authors

24   of similar name. No possibility of confusion exists.

25   50. Favorable book reviews require intense writing effort over a long period. The

26   novel has had eight top reviews (and not one negative review) including the

1    following (the full text of each of these reviews is available). Many of these can

2    be found with an internet search for the title and author. These reviews establish

3    the professional quality of the work and its market value.

4    a. Reader's Favorite review no. 1 (Five Stars): "Great book. … powerful story…

5    very interesting… action, humor… a range of emotions."

6    b. GoodbooksToday.com Reviews: "Great book… inspiring… interwoven in a

7    beautiful, thought-provoking way… complex and compelling… brilliantly depicted

8    handful of dreamers… a remarkable feat…"

9    c. Reader's Favorite review no. 2 (Five Stars): "Pits a crusader for a better world

10   against…a dysfunctional society... a wide spectrum of… perspectives... multi-

11   faceted characters… plenty of food for thought."

12   d. Foreword Clarion Reviews (Five Stars):  "A poignant literary thriller…

13   sweeping in scope… a thoughtful look at larger issues… in one small town…

14   many different… points of view… well-rounded characters… poetic word choice."

15   e. Reader's Favorite review no. 3 (Five Stars):  "… a gripping tale of… wit, love

16   and courage… the fight for democracy… evocative and humorous, just the right

17   mix… a very well constructed plot."

18   d. Ron Jacobs in *CounterPunch:*  "A story of… courage… a story of hope… both

19   heartwarming and believable… elegant descriptions of Maine's landscapes and

20   towns… an ideal metaphor for the… nation itself."

21   e. CreateSpace editor evaluation: "Keeps the reader intrigued… fascinating,

22   complex, and well-developed characters… stories interweave seamlessly…

23   literary, lyrical, and thoughtful… readers savor the words and the situations… a …

24   unique fight for justice."

25   f. Reader's Favorite review no. 4 (Five Stars):  "…full of challenging life, love,

26   family and action… good for everyone…"

27   51. An insignificant fraction of new novels, and only about one percent of book

28   contest entrants, win any book award at all. The subject novel has to date won

29   five honorable mention awards in national and international book contests as

30   shown below (see lists for the indicated award years on website). These awards

31   establish the professional quality of the work and its market value.

32       a. London Book Festival  http://www.londonbookfestival.com/ (select 2015)

33       b. New England Book Festival 2015 (select 2015 results)

34       http://www.newenglandbookfestival.com/winners2015.html

1     c. Los Angeles Book Festival 2016 http://www.losangelesbookfestival.com/
2     d. Great NorthWest Book Festival 2016
3     http://www.greatnorthwestbookfestival.com/
4     e. Pacific Rim Book Festival 2016 http://pacificrimbookfestival.com/

5  52. The novel was printed and released in 2015, accompanied by the above glowing

6     reviews and contest awards. The gift-bound hardback edition was moderately

7     priced at $24.95 and the paperback edition at $17.95, available through Amazon,

8     Barnes & Noble, several booksellers, and its own website www.JohnBarth.net.

9     The net income of the Plaintiff after distribution and shipping costs is about $15

10    for the hardcover, $8 for the digital edition, and $4 for the Amazon paperback.

11    Typical short-term sales of such an acclaimed work might be 20,000 to 30,000

12    copies, and possible sales may have exceeded 200,000 copies. This is in fact the

13    range of sales admitted by Defendant Group A alone as of 9/5/2016 (25,027

14    sales simply summing Exhibits A41a, A42a, A43b, A47a, A47e). Many of these

15    counts are "votes" indicating potentially ten times that number of copies sold,

16    and there are many other sales websites, many of which do not indicate sales

17    counts, as well as sales since the exhibits were made.

18  53. After the first week, sales of legal copies were surprisingly slow, and Plaintiff

19    found that several sources were selling pirated digital copies at no charge or at

20    low subscription prices, preventing further sales. The work is marketed primarily

21    by internet advertising, and is found by web search results for Amazon, Google

22    Books, Barnes & Noble, and other legitimate sales websites. A typical Google

23    search for "The National Memorial" and "John Barth" leads to these legitimate

24    sources in several countries. But the same web searches turn up free or low price

25    copies offered by the defendants. The defendants gave all prospective buyers a

26    choice of several sources of free digital copies, so that no one would buy the

27    novel at ordinary prices. Even used printed copies require the buyer to pay about

1    $4 per copy for postage. No one pays for products that can be had without cost.

2    Sales soon dropped to nothing, despite continuing top reviews and book awards.

3    54. After four years of intensive professional work, Plaintiff had no net return and

4    took a cash loss of $15,000 on sales of the novel, despite its strong critical

5    acclaim and awards won.

6    55. The Plaintiff has been forced to spend many additional months of effort in

7    researching the defendants' complex networks of theft, concealment, and sales of

8    stolen material including the subject work; and months of legal research and

9    preparation of evidence and arguments in defense of his indisputable right to all

10   proceeds of sale thereof. Based upon his work and usual professional rate,

11   Plaintiff estimates a loss of the value of his efforts of $575,000 plus costs of any

12   prosecution beyond a reasonable settlement date of the present case.

13   56. Similar thefts and sales of intellectual property by internet pirates has caused

14   severe losses to a generation of artists who publish and distribute their own

15   work, and has caused publisher revenue losses of thirty percent or more over the

16   past fifteen years despite population increases. The plaintiff's combination of

17   internet knowledge, legal ability, and professional literary composition and

18   marketing knowledge, presents an unusual opportunity for the Court to set an

19   important precedent in the areas of internet fraud, copyright violation, and

20   collusion to obstruct prosecution. A strong precedent will protect artists whose

21   work is now stolen.

22   **General Facts of Stolen Intellectual Property Sales Networks**

23   The defendants sell copies of stolen copyrighted products using groups of

24   websites consisting of Marketing sites, Redirection sites, Payment sites, Distribution

25   sites, and Retaliation Sites. The internet links between these are concealed by the

26   Redirection sites, but can be identified by Product Numbers that are passed between

1    the sites. The defendants own many other websites ("domain names") as well as
2    name registry services and website-hosting computers (servers) themselves, and the
3    servers that map names to internet addresses (DNS servers), and thereby create a
4    kaleidoscope of ever-changing website names or links to conceal the path to their
5    stolen property sales websites. The website names and relationships are changed
6    frequently, so that investigation during one week may show a quite different
7    appearance and operation from the evidence available the next week, although often
8    using the same computers. These appearances can be completely rearranged in a
9    single day or less.
10   Owners of website "domain names" must be registered with ICANN (Internet
11   Corporation for Assigned Names and Numbers) created by the NTIA (National
12   Telecommunications and Information Administration), which permits public access
13   to registration information, including the name and contact information of the
14   registrant (owner of the domain name). This can be obtained from the ICANN
15   "WhoIs?" website WhoIs.Icann.org.
16   The owners of crime websites conceal their names by registering the owner as a
17   false name, or as one of several ownership Concealment Services claiming locations
18   in international fraud venues such as the Cayman Islands, Barbados, and Panama.
19   These "privacy" services are required by ICANN license to reveal the name of a
20   website's real owner upon inquiry by the copyright owner with evidence of unlawful
21   acts, but generally they refuse to respond to requests by email or telephone and must
22   be prosecuted. They often boast to customers that they refuse to reveal their names
23   even during litigation of crime and tort, as "getting what you pay for." Therefore the
24   owners of uncooperative Concealment Services are knowing and willful accessories
25   in crime and tort, which is in fact their principal business. These related entities are

1   made defendants herein as racketeers, together with the known owners of stolen

2   property sales websites, engaged in the same criminal enterprise.

3   The immediate owners of these crime websites and their Concealment services are

4   often chains of concealment entities including shell corporations, foreign

5   subsidiaries, trusts, or holding companies, and/or lawyers creating false offices in

6   foreign fraud venues in hope of exploiting weak treaty provisions and sovereign

7   protection of crime. The relationships among these entities change often. Many such

8   entities and defendants are involved in international money laundering and tax

9   evasion.

10  Some of the defendant Concealment Services are operated by ICANN-licensed

11  internet name registration services ("registrars" or registries), so that they merely

12  type in new names to create new websites, which may be mere keyboard patterns

13  like "ghghgh.com" or "fgfgfg.com." As a result, the names of their crime websites

14  change frequently, and are further obscured by the use of Redirection websites with

15  cryptic names, that connect many temporary marketing websites with the same sales

16  websites using codes instead of product names, often unseen by the user.

17  Many registrars refuse to report the identity of pirates, allowing them to jump to

18  another registrar with a few keystrokes, and then claim that they are no longer the

19  registrar. ICANN itself consistently engages in collusion with the pirates, by

20  refusing to demand registrant identification from prior registrars, and refusing to

21  refer complaints to new registrars, permitting pirates to jump to new registrars, even

22  while admitting that it has been in contact with the pirates.

23  The marketing websites are often "pay-per-click" websites in that their owners

24  receive money when internet users click on the links or advertisements that appear

25  on those web pages.

22

1   The defendants also make extensive use of marketing websites created

2   automatically by Google, such as "google.com/sites/anpuaeg" which link to their

3   sales websites, which are easily created under false names faster than Google

4   deletes them when complaints are made (Exhibits A50b, A50c, A50e through A50l

5   throughout this period). Google also facilitates these stolen property sales websites

6   by providing "Google Drive" storage for them, and refusing to log complaints on its

7   purported "Complaints" page for these pages, and deleting them only long after

8   complaints by more roundabout methods. Google further facilitates these stolen

9   property sales websites by providing "Google Fusion Tables" that turn up the

10  websites in user searches long after they have supposedly been deleted (e.g.,

11  Exhibits A50a, A50d). When Google does delete the lead-in websites and paths that

12  it has provided, it makes the destination websites directly available in its search

13  results. Finally, Google often conceals these related paths to the stolen property

14  websites from search results as "similar results" unless users also request those

15  results. Google also apparently excludes from search results all ownership

16  information about large Concealment Service entities, and is alleged to be hiring

17  staff members of failed or prosecuted operators of stolen intellectual property sales

18  websites. Amazon provides similar website services to piracy operations with

19  cryptic names like "p6ms81huiun" (Exhibits A49a, A49b), enabling them to rapidly

20  produce cryptic sales websites, and refuses to provide the names of the owners.

21  Other search companies may be presumed to provide similar services. Thus many

22  obscure and ever-changing paths link those seeking copyrighted works to the

23  defendants' websites.

24  While the use of Redirection sites may prevent most users from proving the

25  connection, in fact a product code (preceded by a tag such as "creative_id=" or

26  "ref=") is passed from the selection site to the sales site via the Redirection site,

23

1   which proves the connection. The product code is part of the full web address or

2   URL to or from a website, which can be shown by the browser when the cursor is

3   over the URL box (top of screen), or over a button like "Buy Now."

4   Redirection sites also enable pirates to rapidly change which Marketing site

5   connects to which sales site, impeding the process of proving connections over time.

6   The use of Redirection sites is evidence in itself of intent to conceal criminal activity

7   and intent to obstruct prosecution. Where an ownership Concealment Service

8   refuses to identify the owners of such websites engaged in criminal activity, it

9   engages in collusion in the theft of copyrighted works.

10  Among their numerous deceptions, these defendants construct excuses for their

11  crime, for example the concept that piracy is a game ("Playster" et al), or that fraud

12  is humorous (a registrant named "risqi"). But in fact these are adult criminals

13  deliberately causing financial injury for personal gain, and their cynical pretenses

14  have no basis in fact or law.

15  When Cease and Desist letters are sent to the defendants, they make the subject

16  work available to the public on Retaliation Sites without any fee or registration, to

17  completely eliminate all future income of the copyright owner. The Retaliation Sites

18  download the book in PDF form as soon as the link in search results is selected. All

19  of them have ownership concealed by the defendants, and no means of support

20  except for purposes of retaliation.

21  The Internet Corporation for Assigned Names (ICANN) has consistently acted in

22  collusion with its licensed registrars operating Concealment Services, by permitting

23  false registrant information to be registered, refusing to identify the owner

24  registrants of piracy websites, refusing to revoke registrar licenses for such false

25  registrations and refusals, and by refusing to demand evidence from, or to consider

26  evidence against, prior registrars after pirates change registrars, deliberately creating

24

1   a process in which pirates can quickly and falsely register, change concealment

2   services, or change registrars, to avoid identification by investigators.


3   **Facts of Operating Group A (Keezer, Yan, Rakowski, Gordon, Playster, et al)**

4   57. As noted above, the stolen property sales websites and relationships are changed

5      frequently by their owners, and are unlikely to use the same relationships a week

6      later. The information passed between the websites to identify the subject work

7      (such as "creative_id=" or "ref=" etc.) may change with successive orders over

8      one hour, but is presented here to show the continuity of website links during

9      each request to download the subject work. In general these websites use the

10      Playster trademark in combination with the subject work title or identifier, and

11      clearly show defendant Group A offering free copies of the subject work.

12   58. The top line or "URL box" of the browser screen images shows the website

13      address, and where necessary this is shown in full by the browser in a yellow

14      "pop-up" box nearby, by positioning the cursor over the URL box.

15   59. When the cursor is over a button, the browser shows a line at the base of the

16      screen with the new destination website. This shows information passed between

17      the websites to identify the subject work. Note that marketing sites usually go to

18      a Redirection site such as "r867qq.net" and "qertewrt.com" to obstruct tracing,

19      and this in turn goes to Playster.com. However, the destination address includes

20      the tags such as "ref=" or "creative_id=" to identify the subject work, which

21      appear again on the following screen for Playster.com showing the source and

22      nature of the order. The marketing sites often display the Playster logo as well.

**Operation of Website Group A in January 2016**

60. A web search for the subject work in January 2016 turned up several marketing sites hosted by Google, including **Google.com/site/vpiuvot** (Exhibit A44b) and **Google.com/site/ anpuaeg** (Exhibit A44c), both of which take the buyer to **EzineCenter.com** which immediately goes to **eLibrariGo.com** (Exhibit A47a) with the same "asin=1499357591" identifier for the subject work. **eLibrariGo.com** showed the subject work cover and title and the Playster trademark at the "Read Now" button, and the landing page Playster, which links to **Playster.com** using product identifier "creative_id=98825" (Exhibit A47b). The intermediate sales websites could also be found in Google search results.

61. Upon proper Cease and Desist notice, Google responded eventually that it had discontinued service to several lead-in sites. But **sites.Google.com/site/anpuaeg** continued to operate, and Google soon afterward listed **eLibrariGo.com** directly in search results for the subject work. The possibility of collusion by Google was raised, and Google has been alleged to be hiring employees of closed stolen intellectual property sales website owners. It is significant that Google has a related web business Google/books with similar piracy potential. If this is the strategy of Google, future piracy could readily be obscured by manipulating search results. For this reason, the Plaintiff urges a strong precedent of copyright enforcement at this time.

62. The Concealment Services of **NdUkDigital.com** (GoDaddy.com) and **EzineCentre.com** (Tucows.com) were each sent a Notice of Criminal Abuse on 1/30/2016 (Exhibit N09a,b). GoDaddy.com did not respond. Tucows.com responded (Exhibits N10a,b,c,d) that it had forwarded the notice to the registrant, who did not respond. The unlawful sales continued. By 8/26/2016 both websites had changed their Concealment Services (Exhibits E31, E32).

**Operation of Website Group A in June 2016**

63. The website **GleekPlay.com** linked to **Ebook-Finder.com** (Exhibit A42a) using the identifier "creative_id=988488" for the subject work, which showed the title and the Playster trademark at the "Read Now" button (Exhibit A42a top) and Playster as the destination site when the cursor is over the "Download Now" button (Exhibit A42a bottom).

64. The registrant of **GleekPlay.com** (Content Roots, defendant Group A, Exhibit A30) was served a proper Cease and Desist Notice 6/9/2016 (Exhibit N12a,b) and did not respond. Unlawful sales by defendants Playster entities and Content Roots continued.

**Operation of Website Group A in August 2016**

65. Several website relationships were changed by August 2016. New marketing sites were in use, several marketing sites led directly to Playster.com instead of related sites, and most now showed the Playster trademark and emblem.

66. On **ReadEbook4Free.net** when the cursor is placed over the Playster "Start for Free" button by a buyer, it shows the link to r867qq.net with Playster as the "landing page" and the subject work as "creative_id=98797" (Exhibit A41a at bottom), This website shows that the subject work had been downloaded 984 times from this website alone. When the Playster "Start for Free" button is pushed, it arrives at Playster (Exhibit A41b) via r867qq.net with the same "creative_id=98797" (Exhibit A41b at top) showing that Playster has received another buyer for the subject work from ReadEbook4Free.net.

67. When the subject property search result for **MyEBookE.com** is selected by a buyer, it shows the subject work as "asin=1499357591" (Exhibit A45 at top). This website also provides the **Playster** "Read Now" button that links to **eLibrariGo.com** (Exhibit A47a) with the same "asin=1499357591" so that

27

1    Playster receives another buyer for the subject work from MyEBookE.com. In

2    recent tests, selecting MyEBookE.com goes directly to eLibrariGo.com.

3    68. When the search result for the subject property at **NdUkDigital.com** is selected

4    by a buyer, it shows the subject work as "asin=1499357591" (Exhibit A46 top).

5    This website also provides the **Playster** "Start for Free" button that links to

6    **eLibrariGo.com** (Exhibit A47a) with the same "asin=1499357591" so that

7    Playster receives another buyer for the subject work from NdUkDigital.com. The

8    website **DocUk.download** has the same general operation (Exhibits A48a, b).

9    69. The stolen property sales website **eLibrariGo.com** shows that the subject work

10    had been downloaded 9272 times from this website alone by August 2016

11    (Exhibit A47a). When a buyer there puts the cursor over the Playster "Read

12    Now" button, it shows the destination as **r867qq.net** with Playster as the

13    "landing page" and the subject work shown as "creative_id= 98825" (Exhibit

14    A47a at bottom). When the Playster "Read Now" button is pushed, it arrives at

15    Playster (Exhibit A47b) via **r867qq.net** with "creative_id=98825" (Exhibit A47b

16    at top) showing that Playster has received another buyer for the subject work

17    from eLibrariGo.com.

18    70. A proper Cease and Desist email identifying the copyrighted material was sent to

19    the ICANN registered email address of **MyEBookE.com** by the Plaintiff in

20    4/12016, 4/15/2016, and again on 5/17/2016 (Exhibits N02, 03, 04, 05, 07). No

21    response was received to the 4/1/2016 notice, On 4/16/2016 the Concealment

22    Service Group H attempted a deception email reply from a random gmail.com

23    address that it was the owner of PrivacyGuardian.com rather than

24    PrivacyGuardian.org that it had itself registered as the Concealment Service of

25    **MyEBookE.com**. But in fact its reply was to the Notice sent to the registered

26    Concealment Service at PrivacyGuardian.org. It did not disclose the true owner

1   registrant as required by its ICANN registrar license, and did not halt the

2   website's sales of the subject work. By failing to reply from the registered email

3   address, it refused to make the required official reply at all.

4   71. Google searches in 2016 also listed the subject work directly on **Ebook-**

5   **Finder.com.** When a buyer there puts the cursor over the **Playster** "Read Now"

6   button, it shows the destination as **r867qq.net** with **Playster** as the "landing

7   page" and the subject work shown as "creative_id= 98848" (Exhibit A42a at

8   bottom). This site shows that the subject work had been downloaded 526 times

9   from this website alone. When the **Playster** "Read Now" button is pushed, it

10   arrives at Playster.com via R867qq.net with the "creative_id=98848" (Exhibit

11   A42b at top) showing that Playster has received a buyer for the subject work

12   from Ebook-Finder.com.

13   72. When the subject work is selected by a buyer on a **Google/drive.com/host/** site

14   (Exhibit A43a), or by a Google search, the buyer is taken to **EastStemCell.com**

15   (Exhibit A43b). When the cursor is over the **Playster** "Read Now" button, the

16   browser shows the destination as **r867qq.net** with **Playster** as the "landing

17   page" and the subject work as "creative_id=98825" (Exhibit A43b at bottom).

18   This website shows that the subject work had been downloaded **at least 9322**

19   **times** from this website alone ("9322 votes"), and quite possibly ten or even one

20   hundred times as many (932,200 downloads), if one out of ten or one out of one

21   hundred readers returned to cast a vote after reading the book. When the

22   **Playster** "Read Now" button is pushed, it arrives at Playster.com via r867qq.net

23   with product identifier "creative_id=98825" (Exhibit A43c at top) showing that

24   Playster received another buyer for the subject work from EastStemCell.com.

25   73. As with the Google/site marketing websites, upon notice of copyright

26   infringement, Google deleted the infringing websites that it hosted on

29

1    Google/drive.com, but soon afterward showed EastStemCell.com directly in

2    Google search results, achieving the exact same effect.

3    74. The ICANN registrant for "UrBookDownload.com" is listed as George

4    Memphis (a fake name), of 23 Ashley Road, Tsim Sha Tsui, Yai Ma Tei, HK

5    (the address of a restaurant in Hong Kong). A cease-and-desist email was sent to

6    the registered email address by the Plaintiff 6/19/2016 with no response and no

7    effect upon the website's continuing sales of his copyrighted work. However,

8    "UrBookDownload.com" also links buyers to "GleekPlay.com" to request user

9    credit card information (Exhibits G42, G43). The ownership of GleekPlay.com

10    was traced to defendant **Christopher Yan**, an officer of **Playster Corporation**.

11    The registrant is listed as "Content Roots" (Exhibit R16) a/k/a Content Roots

12    Ltd. (Exhibits A60a, A60b), the owner of ContentRoots.com. It admits on this

13    website that it provides to users "digital content" including movies, games,

14    books, and music, and that unlike honest booksellers, its operations are a "risky

15    business" with "more twists and turns than a Cretan labyrinth" (Exhibit A60a).

16    Emails sent to GleekPlay.com did not receive a response.

17    75. Despite many notifications and warnings, the website **ReadEbook4Free.net**

18    remained in operation at least through November 2016 without significant

19    changes, still sending buyers of the subject work to Playster.com. Cease and

20    Desist orders sent to defendant Group A (Exhibits N17a-N17d) produced one

21    evasive reply (Exhibit A82) from defendant Playster.

22    **Facts and Relationship of Defendant Group A in August 2016**

23    76. Defendant **Yan** admits in his LinkedIn page (Exhibit A4) that he performed

24    "strategic content acquisitions" at Sony, sought "content partnerships" at

25    Paramount Pictures, and was Acquisitions Manager at Comcast. In these roles he

26    apparently engaged over many years in very large scale thefts of intellectual

1    property, which he now markets through Playster and his own website **Content**

2    **Roots**. He further admits that he is the Vice President of Content of **Playster**,

3    and thereby responsible for the theft of the subject work and many others, and

4    has been in this capacity since February 2013. He also there admits that Playster

5    offers over 100,000 books "for one low monthly price."

6    77. The stolen property sales website **Playster.com** is registered with ICANN as

7    owned by Playster Corporation, whose LinkedIn page (Exhibit A5) admits that it

8    offers "unlimited" music, movies, books, and games "under one subscription."

9    78. Defendant **Philip Keezer** admits on his LinkedIn page (Exhibit A1) that he is the

10   founder and CEO of "Playster" presumably all of the Playster entities and

11   subsidiaries and owner of the Playster trademark, and admits that its financial

12   "success" derives from supplying vast numbers of movies, games, music, and

13   ebooks to customers "for one low price."

14   79. The trademark "Playster" is registered to defendant 8735344 Canada Inc. (See

15   https://trademarks.justia.com/862/97/playster-86297729.html) having the same

16   office as that of defendant Playster Canada Group, and was acquired from

17   defendant Bountyful International Ltd., the sole owner of Playster Limited. Its

18   registered use is that of the Playster entities, "Providing a…website… which

19   provides …products of others, namely, electronic games…digital music…

20   books… images…and computer freeware." The trademark **Playster** is in fact

21   controlled by the Playster entities, is the property of the Playster defendants, and

22   identifies them as one organization with a common purpose, owner, and officers.

23   The trademark is used on Playster.com owned by "Playster Corporation," and on

24   the marketing websites that link to Playster.com. The Playster trademark has also

25   been used for both the website name Playster.com and the ICANN registrant

26   owner of Playster.com, which is therefore constructively owned by the Playster

1    entities and their owners, which are constructively aware of and liable for the

2    crime and torts effected by this means.

3    80. Defendant Frances Gordon is also a director of 50 other companies plus 86 past

4    directorships, which appear to be dodgy tax-evasion and money-laundering

5    operations. Her relative Michael Gordon, also of county Sussex UK, is claimed

6    to be a director of over one thousand dodgy shell corporations in UK, New

7    Zealand, Australia, and elsewhere. Both Gordons are involved with "a long chain

8    of companies begun in Wellington, taken over by the Pearse Trust from Ireland,

9    with an English company of nominee directors, and some dodgy Italians based in

10   Switzerland, with money laundering charges against them in Uruguay." (see *New*

11   *Zealand links Irish directors with dodgy Swiss firm*, link

12   shakespearebay.wordpress.com/ 2016/06/21/bad-company-new-zealand-links-

13   irish-directors-with-dodgy-swiss-firm).

14   **Facts of Operating Group B (Barber, Birbal, Eimhir, et al)**

15   **Operation of Website Group B in August 2016**

16   81. On website **Ebook-Finder.com** (website Group A above), when a buyer instead

17   puts the cursor on the "Download Now" button, it shows the destination as

18   **qertewrt.com** with the subject work shown as "ref=5028572" (Exhibit B41a at

19   bottom). When "Download Now" is selected, it goes to **UrBookDownload.com**

20   via qertewrt.com with the subject work identified as "ref=5028572" and by title

21   "The National Memorial" (Exhibit B41b top) so that UrBookDownload.com has

22   received a buyer for the subject work from Ebook-Finder.com.

23   82. The registrant of **UrBookDownload.com** is a fake name "George Memphis" of

24   Hong Kong. A Cease and Desist Notice 1/30/2016 was sent to the registered

25   contact address (probably a non-existent email address) and another on 6/9/2016

26   (Exhibit N13). No reply was received. The site remained in operation as of

32

1   8/23/2016 and responded to requests for the subject work. Yet another Cease

2   and Desist letter was sent 8/23/2016 to the website owner registrant above, and

3   to the registrar Wild West Domains, LLC (IANA ID 440) (Exhibit N14).

4   83. On **UrBookDownload.com** when the "Next" button is selected it goes to

5   **FunMonger.net** (Exhibit B41c at top showing "ref=5028572") and then to

6   **TzarMedia.com**, or directly to **TzarMedia.com** (Exhibit B42a at top showing

7   "ref=5028572" and title The National Memorial) showing that this is an order for

8   the subject work from Ebook-Finder.com. TzarMedia.com then requests

9   payment information from the buyer (Exhibit B42b), after which this information

10  is passed along to Playster.com to supply the book download.

11  84. The websites **TzarMedia.com** and **LilPlay.com** are exactly identical

12  intermediate websites (Exhibits B40b,c and B42a) which obtain payments for

13  stolen property offered through sales websites. TzarMedia.com is falsely

14  registered to "Tzar Media" with office registered as 538 West 21st Street

15  #77490, Houston, TX 77008-3642. The Texas Secretary of State reports that

16  there is no listing for TzarMedia as a corporation, LLC, LLP, d/b/a, or foreign

17  registration. Therefore the registrar of TzarMedia.com, defendant **Enom inc.** is

18  complicit in deliberately obstructive registration. The registered owner of

19  LilPlay.com is defendant Douglas Barber, of defendant Eimhir Limited.

20  Numerous persons have complained of false credit card charges by defendant

21  Eimhir Limited after using LilPlay.com or TzarMedia.com including every user

22  report on "scamcharge.com/c/eimhir-ltd-london-gb" and "reportscam.com" and

23  "mywot.com" as well as 98 percent of user reports at "easycounter.com." The

24  website "Zemana.com" describes TzarMedia as "a browser hijacker that can be

25  installed on your browser without your knowledge" and shows the screen of

1    Exhibit B42a, with instructions to remove malware. A long list of similar

2    websites is alleged to be under the same ownership.

3    85. When the search result for the subject property at **Book-Me.net** (defendant

4    Group D) is selected by a buyer, it shows the subject work as "ref=5044165"

5    (Exhibit B40a at top). When the cursor is placed over the "Get Instant Access"

6    button the browser shows the destination as **LilPlay.com** with the subject work

7    as "ref=5044165" (Exhibit B40a at bottom). When that button is pushed, it goes

8    to **LilPlay.com** with the same "ref" and the title The National Memorial (Exhibit

9    B40b at top), **LilPlay.com** is identical to **TzarMedia.com** (Exhibit B42a) in all

10   but name. Both request payment in the same manner (Exhibits B40c, B42b).

11   86. The Concealment Services for **LilPlay.com** and **TzarMedia.com** were sent

12   further Cease and Desist Notices of imminent prosecution 8/23/2016 to their

13   ICANN registered email addresses (Exhibit N15a,b).

14   **Facts and Relationship of Defendant Group B in August 2016**

15   87. Defendant **Eimhir Limited** is the owner registrant of website **LilPlay.com**

16   which is noted to have 218,664 daily visitors (Exhibit B10), in addition to at

17   least 3,000 daily visitors on its other similar websites, including m3play.com, bb-

18   play.com, apxplay.com, ovplay.com, bob-game.com, eonplay.net,

19   letsplayventures.com, vegplay.net, fatplay.net, and bamplay.com (Exhibit B10),

20   all described in the same words as providing the same content, and on which it

21   describes itself as providing "subscription based … books, music and software."

22   88. Defendant **Eimhir Limited** had seven county court judgments against it in the

23   past six years.

24   89. Based upon internet traffic flows, StatShow.com estimated (Exhibit B10) that

25   Lilplay.com has a global rank of #6,240 which puts itself among the top 10,000

26   most popular websites worldwide. … It reaches roughly 2,294,550 users and

27   delivers about 5,048,070 pageviews each month.

90. Based upon revenue flows, StatWebAz.com estimated (Exhibit B11) that

| | |
|---|---|
| LilPlay.com is worth | $1,758,240 |
| WOT Trustworthiness | Very Poor |
| WOT Privacy | Very Poor |
| WOT Child Safety | Very Poor |

The WOT safety ratings are provided by the Web Of Trust organization.

91. The National Disaster Life Support Foundation indicts defendant **Eimhir Ltd** (Exhibit B12) for piracy of copyrighted textbooks:

The National Disaster Life Support Foundation has not authorized and does not do business with sciencebookpdf.com, Eimhir Limited or any of their affiliates. These companies are in violation of copyright laws and may be guilty of intellectual property theft. The Foundation is currently taking action to prevent further electronic distribution of our textbooks by these companies.

92. Defendant Group B owns twenty similar domains (Exhibit Reg09c) all registered in the same words as providing the same content, and on which it describes itself as providing "subscription based ... books, music and software."

**Table of Websites**

Websites associated with Operating Groups may perform any combination of Lead-in (L), Marketing (M), Redirection (R), Subscription (S), Payment (P), and Download (D) functions. Some are held in reserve or have unknown functions. Websites may have multiple Concealment groups as registrations and registrars are changed. Some have multiple link destinations or Operator groups. The operational relationships of websites are frequently changed by their operators. Websites may have identical or nearly-identical copies with different names. Operation of the DNS (distributed name service) may lead from a name to any of several equivalent servers, and several names may lead to the same server. Redirection websites are used between other websites to obscure their linkage.

35

Where the Operator Group is still known only to Concealment Services, only the latter is shown. Where the website uses the trademark or links to websites of an Operator group, that is shown.

In addition, numerous Retaliation sites (Retal) are used to destroy the value of the subject work when the Operating Groups are forced to delete it from their payment-based websites.

| Website Domain Name | Functions(1) | Operator Group (2) | Concealment Groups | Exhibits |
|---|---|---|---|---|
| Group A: | | | | |
| 01. Playster.com | S,P,D | A (O,T) | A owner 6 | R13a-R13b |
| 02. r867qq.net | Redirect | A (L) | A,I | R31 |
| 03. ReadEbook4Free.com | L,M | A (L,T) | G | R1a, R1b |
| 04. ELibrariGo.com | L,M | A (L,T) | H | R2 |
| 05. MyEBookE.com | L,M | A (L,T) | H,I | R3 |
| 06. NdUkDigital.com | L,M | A (L,T) | M | R4 |
| (NdUkDigital operates name servers NS1, NS2.NDUKDIGITAL in Moscow) | | | | |
| 07. EBook-Finder.com | L,M | A (L,T) | G | R5 |
| 08. EastStemCell.com | L,M | A (L,T) | H | R6 |
| 09. GleekPlay.com | L,M | A (L) | G, owner 7 | R16 |
| 10. DocUk.download | L,M | A (L) | 5 | R32 |
| 11. EzineCentre.com | L,M | A (L) | 4 | R12 |
| Group B: | | | | |
| 20. TzarMedia.com | L,M,P | B (L) | 2 false | R10a-R10c |
| 21. QwrtEwrt.com | Redirect | A,B (L) | I | R30 |
| 22. UrBookDownload.com | L,M | B (L) | G | R7a-R7c |
| 23. Book-Me.net | L,M | B (L) | H | R8 |
| 24. LilPlay.com | L,M,P | B (L) | B owner | R9a-R9c |
| 25. FunMonger.com | L,M | B (L) | 3 | R11 |

**NOTES:**
(1) Functions: Lead-in (L), Marketing (M), Redirection (R), Subscription (S), Payment (P), and Download (D)
(2) links to the Operator Group are denoted O (owned by), T (trademark), L (links to their websites)

1  Other concealment groups and false names and/or false contact information:
2  1. Whois Privacy Corp., Ocean Centre, Montagu Foreshore, East Bay Street,
3     Nassau New Providence BS
4  2. Tzar Media, 538 West 21st Street, Houston TX 77008-3642
5  3. Manuel Bescos, Severo Ochoa, 9, Las Rozas Madrid 28232 ES
6  4. fitrahudin risqi, dusun setan rt 004 rw 044 maguwoharjo, sleman Daerah
7     Istimewa Yogyakarta 55282 ID
8  5. fandy akhmad, jl.pesajen Gg.datuk gritu 9 demaan, jepara JawaTengah 59419 ID
9  Owners:
10 6. Playster Corporation (defendant, see Parties)
11 7. Content Roots, Ltd. (defendant, see Parties)


12 **Table of Website Operator Groups**

| | | Concealment | | |
|---|---|---|---|---|
| **Operator Group** | **Websites** | **Groups** | **Notices Served** | **Responses** |
| A. Playster et al | | | N17a 8/28/2016 | denial Exh. A82 |
| Playster.com | | | | |
| ReadEbook4Free.net | | | none Exh. A83 | |
| Ebook-Finder.com | | | Exh A80 | |
| EastStemCell.com | | | | |
| MyEbookE.com | | | | |
| ELibrariGo.com | | | | |
| NdUkDigital.com | | | | |
| DocUk.download | | | | |
| GleekPlay.com | | | N12a,b 6/9/2016 | no response |
| B. Eimhir et al | | | | |
| UrBookDownload.com | | | | |
| Book-Me.net | | | | |
| LilPlay.com | | | | |
| TzarMedia.com | | | | |
| FunMonger.com | | | | |

**Table of Website Ownership Concealment Groups**

Concealment Groups may conceal many websites, and are registered as the website owner "registrant" instead of the real owner name. Their ICANN license requires them to reveal the website owner upon proper notice of copyright infringement, but they usually refuse to do so until sued. Concealment services are often ICANN-licensed registrars, able to quickly change registrations, create new domain names, and change their functions. Their registered owners are often false names, of non-existent persons or vaguely-specified entities. Some have been observed to swap website listings, to complicate notifications and obstruct litigation. Many provide website hosting on their own servers, in some cases to government websites which they may then modify to prevent tracing ownership of the Concealment Service or its shell corporations, and some control DNS (distributed name service) name-servers that direct requests to servers at other numeric internet addresses. Most claim ownership entities or offices in foreign venues of fraud, money laundering, and tax evasion.

| Concealment Group | Websites Concealed | Operator Group | Notices Served | Responses |
|---|---|---|---|---|
| G. Richard Kirkendall, Juan Mata, NameCheap Inc., WhoisGuard, Inc., | | | | |
| | | | N08a 5/18/2016 | no response |
| | | | N08b 8/27/2016 | no response |
| | Ebook-Finder.com | A | N08a 5/16/2016 | no response |
| | | | N08b 8/27/2016 | no response |
| | ReadEbook4Free.com | A | N08a 5/16/2016 | no response |
| | UrBookDownload.com | B | N08b 8/27/2016 | no response |
| H. Schilling, Uniregistrar Corp., Uniregistry Ltd, PrivacyGuardian, et al | | | | |
| | | | N02 4/01/2016 | no response |
| | | | N03 4/15/2016 | evasion |
| | | | N04 4/15/2016 | no response |
| | | | N05 5/16/2016 | evasion |

Uniregistrar Corp/Uniregistry Ltd owners of PrivacyGuardian.com fraudulently registered the owner of PrivacyGuardian.org as PrivacyGuardian.org and denied ownership.

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  | N07 8/27/2016 | no response |
|  |  |  | N18 8/28/2016 | no response |
| MyEBookE.com | A |  | 4/1/2016 | no response |
|  |  |  | 4/1/2016 (namesilo) | no response |

(9/27/16 registrar namesilo registrant Whois Privacy corp)

|  |  |  |  |  |
|---|---|---|---|---|
| Book-Me.net | B |  | N06 5/16/2016 | no response |

(9/27/16 registrar namesilo registrant PrivacyGuardian)

|  |  |  |  |  |
|---|---|---|---|---|
| ELibrariGo.com | A |  | current | no response |

(9/27/16 registrar namesilo registrant PrivacyGuardian)

|  |  |  |  |  |
|---|---|---|---|---|
| EastStemCell.com | A |  | current | no response |

(9/27/16 registrar namesilo registrant PrivacyGuardian)

10/19/16 Email Response: denying they can proceed against prior registrar

10/20/16 Email Reply: they will be prosecuted for collusion by obstruction

PrivacyGuardian.org

1928 E. Highland Ave. Ste F104, Phoenix AZ 85016 US

pw-62e82cdd899402940c9f085c1ac98315@privacyguardian.org

(the registrant has been unlawfully changed to itself, PrivacyGuardian.org)

The registrant of PrivacyGuardian.org was formerly PrivacyGuardian.Com

PO BOX 30485, Seven Mile Beach, Grand Cayman KY1-1202 KY

402475@Privacy-Link.Com

The owner of PrivacyGuardian.com was Privacydotlink Customer 402475

PO Box 30485, Seven Mile Beach Grand Cayman KY1-1202 KY

402475@Privacy-Link.Com

The owner of Privacy-Link.com was Frank Schilling, Uniregistry

3-110 Governor's Square, Seven Mile Beach Grand Cayman KY1-1108 KY

Contact@Uniregistry.Com

I. Enom Inc, Whois Privacy Protection Service, Inc, et al

Whois Privacy Protection Service, Inc.

|  |  |  |  |
|---|---|---|---|
| PO Box 639, Kirkland WA 98083 |  | N16a 8/27/2016 | no response |
| twcdjsvjk@Whoisprivacyprotect.Com (r867.net) |  |  |  |
| qbndtlngq@whoisprivacyprotect.com (qertewrt.com) |  |  |  |
| qertewrt.com |  | N16a 8/27/2016 | no response |
| r867qq.net |  | N16a 8/27/2016 | no response |
| (both) |  | N16c 10/5/16 | no response |

K. George Memphis, 23 Ashley Road, Tsim Sha Tsui, Yai Ma Tei N/A 00000 HK

|  |  |  |
|---|---|---|
| george.memphis123@gmail.com | N13 6/09/2016 | no info sent |
|  | N14 8/23/2016 | no info sent |

```
 1              UrBookDownload. B          current
 2  L1. (Tucows Domains Inc.)             N10a 1/30/2016   no info sent
 3     Contact Privacy Inc. Customer 0139852698   N10b 2/14/2016   no info sent
 4        96 Mowat Ave, Toronto ON M6K 3M1 CA  N11 6/09/2016   no response
 5        +1.4165385457 ezinecentre.com@contactprivacy.com
 6              EzineCentre.com   A        past
 7  L2. (Tucows Domains Inc)
 8     Risqi dusun setan rt 04 rw 44 maguwoharjo, sleman Daerah Istimewa,
 9        Yogyakarta 55282 ID (fraudulent: the address of a hospital in Indonesia)
10        +62.85878683180 fitrahudinsukses@gmail.com
11              EzineCentre.com   A        current
12  M1. GoDaddy    NdUkDigital.com  A    past  N09 1/30/2016   no response
13  M2. risqi jeky, gejayeb rt 04 rw 46, maguwoharjo jawa tengah 55282 ID
14        (non-existent address in Indonesia, fraudulently registered by GoDaddy)
15              NdUkDigital.com   A        past
16     Registrar Onlinenic Inc IANA ID: 82 +1.5107698492
17        Onlinenic-enduser@Onlinenic.com
18  M3. Domain ID Shield Service Co. Limited
19        5/F Hong Kong Trade Centre, 161-167 DesVoeux Road Central, Hong Kong,
20        HK 999077 CN nd5685024556602@domainidshield.com).
21              NdUkDigital.com   A        current
22  N1. Digital Break Ltd
23        One Victoria Square, Ground Floor, Birmingham, West Midlands,
24        B1 1bd GB +44.2038080292 Email@Digitalbreakltd.com
25              FunMonger.com   B?        past
26  N2. Manuel Bescos, Severo Ochoa, 9, Las Rozas, Madrid 28232 ES
27        +34.655285856 manuel@magnificodomains.com
28              FunMonger.com   B?    current
29  O. Whois Privacy Corp.
30        Ocean Centre, Montagu Foreshore, East Bay St, Nassau, Bahamas 0000 BS
31        +1.5163872248 myebooke.com-admin@customers.whoisprivacycorp.com
32              MyEBookE.com   A        current
33  P. Tzar Media
34        538 West 21st Street, Houston TX 77008-3642
35        +1.3023195112 Info@Tzarmedia.Com
36              TzarMedia.com   B        current   N15a, Exh. A81
```

**Facts of Websites with Concealed Owners in August 2016**

93. The websites **EBook-Finder.com** and **ReadEBook4Free.net** (stolen property sales website group A) display the Playster trademark as shown on Playster.com, and link to Playster.com, with links with product numbers between marketing and redirection websites to Playster.com (Exhibits A41a,b and A42a,b), and are therefore used to sell the subject work of the Plaintiff. These websites (website Group A) are registered as owned by "WhoIsGuard" (Concealment Group G) claiming the office of defendant Mata (Exhibits Reg01, 05). WhoisGuard has refused to identify any other owner of the websites. Therefore, WhoisGuard is responsible for the content and operation of the websites.

94. The websites **MyEBookE.com** (website group A) and **Book-Me.net** (website group B) display screens shown by Exhibits A45, and B40d with the Playster emblem or trademark as shown on the Playster Website, and show links with product numbers further establishing the subject work, and link to **Playster.com** to download copies of the subject copyrighted work. Both websites list as registered owner defendant **PrivacyGuardian.com** a/k/a PrivacyGuardian, a Concealment Service (Concealment Group H) used to further crime of defendant Groups A and B.

95. The Concealment Service of **Book-Me.net** (Privacy Guardian, Uniregistry, et al, Group H) was sent a Notice of Imminent Prosecution on 1/30/16 and again on 5/16/2016 (Exhibit N06a 402575@privacy-link.com). No response was received. In recent tests, selecting search result Book-Me.Net goes to "law170.com" (Exhibit B40d) which shows the site unavailable, perhaps the consequence of seizure in the course of an investigation.

96. The websites **eLibrariGo.com** and **EastStemCell.com** (of website group A) display screens shown by Exhibits A47a,b and A43b,c with the Playster emblem

41

1   or trademark as shown on the Playster Website, and show links via Redirection

2   site **r867qq.net** accompanied with product numbers further establishing the

3   subject work, and link to **Playster.com** to download copies of the subject

4   copyrighted work. Both websites list registered owner defendant

5   **PrivacyGuardian.com** (Concealment Group H) d/b/a PrivacyGuardian, a

6   Concealment Service used to facilitate crime of defendant Groups A and B.

7   97. The websites **r867qq.net** and **qertewrt.com** are Redirection sites used to

8   obstruct tracing of sales between marketing websites and stolen property sales

9   websites, so that the website where the product is named and selected does not

10  show the final sales website as the destination of the "Buy Now" button, and the

11  final sales website does not show the product selection website. Instead, both

12  show only the Redirection site between them as the source or destination.

13  Redirection site **r867qq.net** serves website group A (**Playster**, Exhibits A42a,b,

14  A43b,c, and A47a,b) and Concealment group H; website **qertewrt.com** serves

15  website group B (Exhibits B40a,b,d and B41a,b,c).

16  98. The website **FunMonger.net** is an intermediate website used by Playster to

17  obstruct tracing of sales between its Marketing websites and stolen property

18  sales websites. The registrant is Digital Break Ltd, One Victoria Square,

19  Birmingham, West Midlands, B1 1bd GB.

20  **Facts of Concealment Group G (Kirkendall, Mata, NameCheap, WhoIsGuard)**

21  99. The websites **EBook-Finder.com** (Exhibits A42a,b) and **ReadEBook4Free.net**

22  (Exhibits A41a,b,c,d) display the Playster trademark as shown on Playster.com,

23  and link to Playster.com, with links with product numbers between marketing

24  and redirection websites to Playster.com (Exhibits A41a,b,c,d and A42a,b), and

25  are therefore used by defendant group A to sell the subject work of the Plaintiff.

1    These websites are registered with Concealment Service "WhoIsGuard,"

2    claiming the office of defendant Mata (Exhibits R1, R5).

3    100.   On 5/16/2016 Cease and Desist Notices of Imminent Prosecution were served

4    upon the contacts for **ReadEBook4Free.net** (Exhibit N08), and the linked

5    websites UrBookDownload.com (exhibit N13), and Content Roots Ltd (Exhibits

6    N12a,b) for the Playster destination (Exh. A41a,b,c,d). No reply was received.

7    101.   On 8/27/2016 Cease and Desist Notices of Imminent Prosecution were again

8    served upon contacts for **EBook-Finder.com** and **ReadEBook4Free.net** as well

9    as their Concealment Services WhoisGuard et al (Exhibit N05b, N08a,b,c).

10   102.   As of the filing hereof, WhoisGuard had refused to identify any other owner

11   of the websites. Therefore, WhoisGuard is responsible for the content and

12   operation of the stolen property sales websites **EBook-Finder.com** and

13   **ReadEBook4Free.net**.

14   103.   Defendant NameCheap Inc. is the former registrant and reseller of

15   WhoIsGuard.com, and after several lawsuits against them, began registering the

16   owner as "WhoIsGuard Inc" with the defendant lawyer Mata in Panama as an

17   agent to conceal their role as owner of this Concealment Service. Google

18   searches find no reference worldwide, to any corporate registration or filing of

19   any legal entity named "WhoisGuard Inc," therefore is likely a false name

20   unlawfully registered by the former registrant NameCheap Inc to conceal its

21   responsibility. NameCheap Inc is the owner of NameCheap.com, which offers

22   "WhoisGuard service" as their own product or service, to deny website owner

23   information to victims of crime. Therefore defendant NameCheap Inc d/b/a

24   WhoIsGuard, is the constructive owner of stolen property sales websites **EBook-**

25   **Finder.com** and **ReadEBook4Free.net**.

104.   Richard Kirkendall is the owner, incorporator, and CEO for 15 years of NameCheap Inc. (Exhibits G1 and G2 with photo deleted), and thereby the ultimate owner of, or the ultimate owner of Ownership Concealment services acting as agents and accomplices of the owners of, stolen property sales websites **EBook-Finder.com** and **ReadEBook4Free.net**.

105.   Defendant NameCheap Inc was notified by ICANN 5/1/2014 of its breach of the ICANN registrar agreement (Exhibit G4, text available) by failure to provide audits, and refused to respond for three months, and defendant Kirkendall later admitted having given ICANN a false email address (Exhibit G5). Most contact information of NameCheap Inc was falsified, showing intent to conceal even itself, even to international authority ICANN itself.

106.   In a public question session (Exhibit G6), defendant Kirkendall admitted that defendant NameCheap Inc "fights" in "courts of law" to "protect our customers" rather than "hand over your information" as required by its ICANN license. When asked whether NameCheap was concealing criminal website owners from "people who have valid legal concerns" he replied "Everyone has their reasons" to conceal their activities. In practice Kirkendall uses individual privacy as an excuse to conceal the owners of piracy websites, and refuses to reveal the names of pirates, in direct and deliberate violation of his ICANN license agreement.

107.   Kirkendall openly opposes ICANN's reforms to deny Ownership Concealment services to commercial websites, falsely claiming that this would deny privacy to individuals, and operates or supports websites "TechDirt.com" and "RespectOurPrivacy.com" to propagandize against ICANN's reforms to expose pirates, and denounces the reforms as the work of "copyright extremists" (Exhibit G7, full text available). The same websites propagandize against all actions against piracy Concealment Services. Defendants Kirkendall and

1    NameCheap Inc thereby admit direct and willful collusion with copyright pirates,

2    and admit acting as principals in these crimes.

3    **Facts of Concealment Group H (Schilling, Uniregistrar, PrivacyGuardian)**

4    108.   The Concealment Service of website **MyEbookE.com** on 4/1/2016 was

5    unlawfully registered not as a legal entity, but as a mere website,

6    PrivacyGuardian.org. Both were sent Cease and Desist Notices on 4/1/2016

7    (Exhibit N02a,b) without response or effect.

8    109.   The Concealment Service of the Concealment website PrivacyGuardian.org

9    was also unlawfully registered not as a legal entity, but as another website,

10   PrivacyGuardian.com. Its Concealment Service was listed as "Privacydotlink

11   Customer 402475" at the same address PO Box 30485, Seven Mile Beach,

12   Grand Cayman Ky1-1202 KY, with email 402475@Privacy-Link.Com showing

13   **Privacy-Link.com** to be the Concealment Service. **Privacy-Link.com** A/K/A

14   "Privacy Link" A/K/A "Privacydotlink," et al, claiming the same address, is

15   therefore the owner registrant of the Concealment Services PrivacyGuardian.com

16   and PrivacyGuardian.org. The owner of **Privacy-Link.com** was also registered

17   with unlawful vagueness as "Frank Schilling, Uniregistry."

18   110.   Uniregistrar Corporation A/K/A Uniregistry Ltd. (CA) A/K/A "Uniregistry"

19   et al, all having the address 3-110 Governors Square, 1361 GT, Grand Cayman

20   KY11108 Cayman Islands, is the owner of Uniregistry.com and Privacy-

21   Link.com, the owner of PrivacyGuardian.com and **PrivacyGuardian.org**.

22   Uniregistrar Corporation is the ICANN-licensed website registrar, IANA ID:

23   1659 which made these numerous unlawful vague registrations to conceal itself.

24   111.   Frank Schilling claiming the registered address of Uniregistrar Corporation, is

25   the founder, owner, and managing director of Uniregistrar Corporation, and is

26   the ultimate owner registrant of, or the ultimate owner of Ownership

1   Concealment services acting as agents and accomplices of the owners of, stolen

2   property sales websites **MyEbookE.com, Book-Me.net**, **EastStemCell.com**

3   and **ElibrariGo.com**. These entities are defendant Group H.

4   112.   The above entities were sent Cease and Desist Notices on 4/15/2016 (Exhibit

5   N03) about MyEbookE.com. A reply was received from a random gmail address

6   (Exhibit N04b) claiming to be the owner of PrivacyGuardian.com and claiming

7   merely that PrivacyGuardian.org was a "different entity" and refusing to disclose

8   its owner. This is equivalent of no response. A Cease and Desist order was sent

9   to defendant Group H on 8/28/16 (Exhibits N18a-N18c), to which there was no

10  response. No identification of owner resulted, in violation of the ICANN

11  registrar license. No change in their piracy sales of the subject work resulted.

12  113.   The Concealment Service of stolen intellectual property sales website **Book-**

13  **Me.net** was unlawfully registered as the website PrivacyGuardian.org. On

14  5/16/2016 the above entities were served Cease and Desist Notices (Exh. N07).

15  114.   On 5/17/2016 the same entities above were again served Cease and Desist

16  Notices (Exhibit N05) concerning MyEbookE.com. Another reply from a

17  random gmail address claimed to be from Port Media Holdings, claiming to be

18  the owner of PrivacyGuardian.com, and again merely denying ownership of

19  PrivacyGuardian.org, and claiming that "my client has no association with

20  myebooke.com or readebook4free.net." The registered Concealment Service of

21  **MyEbookE.com** had been altered to a random name and address in Indonesia.

22  This does not affect the liability of defendant Group H for refusing to identify the

23  website owner prior to the change of Concealment Service.

24  115.   On 8/27/2016, over one year after publication and seven months after

25  discovery of their piracy and sale of stolen intellectual property,

26  PrivacyGuardian.org and the contacts of the above entities were again served

1    with Cease and Desist Notices as the present or former Concealment Services or

2    owner registrants of **MyEbookE.com, Book-Me.net**, **EastStemCell.com** and

3    **ElibrariGo.com.** No response was received.

4    116.   On 11/21/2016 a search for the subject work on another search engine

5    (DuckDuckGo) showed thirty-four identical websites offering the subject work

6    free of charge, all registered via **PrivacyGuardian.org** o these defendants.

7    Selecting one of these websites causes the work to be downloaded immediately,

8    without even loading a webpage. These websites are operated as Retaliation

9    Sites offering without charge the works of owners who file Cease and Desist

10   notices against the defendants' piracy websites, to eliminate all future sales and

11   income from the copyrighted works. These piracy sites include Actiorama.com,

12   Almoogaz.com, Amorset.com, Art4public.net, Banbiku.com, Bdfsos.com,

13   Bohaomx.com, Briandylan.com, Btwdanbury.com, Cialisqo.com,

14   Cltmonthly.com, Ddqmy.com, Dingconn.com, Dripscapes.com, Endishi.com,

15   Esquirecap.com, Fjfisher.com, Gyqgjxc.com, Gzlkwx.com, Hbzylj.com,

16   Hxslate.com, Krenovis.com, Lapajia.com, Ledeble.com, Lelarry.com,

17   Libaoen.com, Liyacha.com, Pecesaltum.com, Picanadr.com, Romneybook.com,

18   Rksag.com, Saitlaunch.com, U-sentric.net, and Zhuyaozhou.com.

19   117.   As of the filing hereof, defendant Group H had refused to identify any other

20   owner of these websites. Therefore, defendant Group H are the owners, or are in

21   collusion with the owners of these websites, and are responsible for the content

22   and operation of these websites.

23   **Facts of Concealment Group I (Enom Inc, WPPS, et al) in August 2016**

24   118.   Defendants **Enom** and **WPPS** and other entities to be named, are the owners

25   of, or the owners of Concealment Services acting as agents and accomplices of

47

1    the owners of, stolen property sales websites and their accomplices and agents,

2    and are referred to collectively hereinafter as "defendant Group I."

3    119.   Defendant **Enom Inc**. uses **enom.com** and name.com to act as an ICANN-

4    licensed domain name registrar and offers "**Whois Privacy Protection Service**"

5    **(WPPS)** as its own product (Exhibit I40) to website owners and resellers,

6    claiming to be "**Whois Privacy Protection Service, Inc**." with the address PO

7    Box 639, Kirkland WA 98083. **Whois Privacy Protection Service, Inc** may be

8    a fictitious name used to obstruct prosecution.

9    120.   Close inspection of defendant Enom's website **enom.com** revealed that its

10   client websites **qertewrt.com** (Exhibit I30) and **r867qq.net** (Exhibit I31) both

11   have the same unnamed reseller (usually the actual registrant) with office at

12   Marine Lodge, Balmoral Gap, Hastings Main Road, Hastings, Christ Church,

13   Barbados, the same office as defendants **Bountyful International Ltd** and

14   **Hyuna International Ltd** (Exhibit A10a,b) the original owner of the **Playster**

15   trademark, having unregistered website **hyuna.bb** (Barbados). Therefore the

16   owner of websites **qertewrt.com** and **r867qq.net**  is defendant group A.

17   121.   Websites **qertewrt.com** and **r867qq.net** are used solely as Redirection sites.

18   Redirection site **r867qq.net** serves groups A (**Playster**, Exhibits A42a,b,

19   A43b,c, and A47a,b) and H; website **qertewrt.com** serves website group B

20   (Exhibits B40a,b,d and B41a,b,c). Cease and Desist orders sent to defendant

21   Group I produced one evasive reply (Exhibits N16a-N16d).

22   122.   The government website of Barbados, www.gov.bb has a Corporations and

23   Intellectual Property Office with website www.caipo.gov.bb, which itself was

24   hijacked in August 2016, with web links inserted that demanded payment or

25   displayed scam advertising, even for the Contact Us button. The CAIPO office

1    was helpfully notified by the Plaintiff and commenced investigation, but

2    nonetheless refused to identify the owners of the criminal entity.

3    123.   On 11/21/2016 a search for the subject work on another search engine

4    (DuckDuckGo) showed ten identical websites offering the subject work free of

5    charge, all registered via **WPPS** to these defendants. Selecting one of these

6    websites causes the work to be downloaded immediately, without even loading a

7    website. These websites are operated as Retaliation Sites to injure owners who

8    file Cease and Desist notices against the defendants, to prevent all future income

9    from sale of the copyrighted works. These piracy sites include Jczckj.com,

10    Jnhsgjg.com, Kvatro.net, Nazscm.net, Rajasthantoursonline.net, Tdmop.net,

11    Xhspin.com, Youthfuturesmetro.net, Zxshopus.com, and 968yun.net.

12    124.   Defendants **Enom** and **WPPS** have a long history of acting in violation of

13    their ICANN registrar agreement, by operating websites using trademarks or

14    names in use by others ("cybersquatting"), or website names easily confused

15    with existing websites, or whose names were taken by "pouncing" upon cases of

16    accidental non-renewal of names, blackmailing trademark owners to purchase

17    the names, and forcing owners to litigate to terminate the trademark and goodwill

18    violations. Their practice has been to default upon ICANN complaints, without

19    penalty beyond transfer of the names to the legitimate owners.

20    125.   The UDRP complaints Panel of the National Arbitration Forum found against

21    defendant Whois Privacy Protection Service, Inc, in <u>Bank of America v. Whois</u>

22    <u>Privacy Protection Service, Inc (2008)</u>, as follows (WPPS is the Respondent):

23    <u>Respondent registered and is using the disputed domain names in bad faith…for the</u>

24    <u>purpose of disrupting the complainant's business</u>…Respondent is profiting off the

25    likelihood that users will be confused as to Complainant's affiliation with the

26    disputed domain names, and is taking advantage of the goodwill associated with the

27    BANK OF AMERICA mark.

1   126.   A 2009 report *Circumvention of Registrar Accreditation Agreement Section*

2      *3.7.7.3* of the Intellectual Property Constituency (IPC represents owners of IP in

3      the GNSO which advises ICANN on policy issues of website name owners)

4      notes that name registrars such as defendant **Enom Inc** are required by their

5      ICANN license to include Section 3.7.7.3 in their agreement with each domain

6      name registrant, as the <u>primary means to prevent internet crime</u>. The report notes

7      that Enom Inc refuses to make this required contract with owner-registrants:

8   Section 3.7.7.3 allows the licensing of domain name registrations, but recognizes
9   that absent a disclosure requirement, licensing of domain names could abet illegal
10  activity by making it much harder and more expensive to locate and bring to account
11  parties engaged in illegal activities on the Internet.
12  …
13  Registrar Affiliation: eNom
14  Does Registrar's Registration Agreement Incorporate RAA 3.7.7.3?  No.

15  The report specifically cites defendant **Enom Inc.** and its **WPPS** as routine

16  violators, and cites cases where these defendants complied with their license only

17  upon civil action or complaint to WIPO or ICANN: <u>California Closet Co., Inc. v.</u>

18  <u>TMPCapital LLC and Whois Privacy Prot. Svc., Inc.</u>, WIPO Case No. D2006-1359

19  (2007), <u>Davis + Henderson, Limited Partnership v. Whois Privacy Protection</u>

20  <u>Service, Inc./Demand Domains Inc</u>, WIPO Case No. D2008-1162 (2008), <u>AXA SA</u>

21  <u>v. Whois Privacy Prot. Svc., Inc. and Demand Domains, Inc</u>., WIPO Case No.

22  D2007-1382 (2008).

23  Conversations with legal department have indicated that they will not deactivate any
24  privacy unless and until a UDRP or civil action is filed.

25  The report cites fourteen additional cases showing that these defendants often do not

26  even respond to complaints to the international authorities WIPO and ICANN:

1  There are numerous WIPO and NAF UDRP decisions in which Whois Privacy
2  Protection Service, Inc. failed to file a Response to a UDRP Complaint in which it
3  was a named Respondent

4  127.   Defendant WPPS was not deterred by this international condemnation. In

5      2012, the UDRP complaints Panel of the National Arbitration Forum found

6      against WPPS in Uprising Communications Group v. Whois Privacy Protection

7      Service, Inc, (WPPS is Respondent):

8  The Respondent is a "notorious cybersquatter" with a history of UDRP decisions
9  determining that Respondent registered and used domain names in bad faith.

10  A "cybersquatter" is an entity that registers domain names containing the

11  trademarks of others, and then blackmails the trademark owners to pay large sums

12  for the domain name to avoid improper use of the trademark. The trademark owner

13  must litigate to transfer the name.

14  128.   Eight years after the Bank of America decision, defendant WPPS is still not

15      deterred. The UDRP Panel of the WIPO Arbitration and Mediation Center found

16      against defendant WPPS in May 2016, in Dymocks Holdings Pty Ltd v. Whois

17      Privacy Protection Service, Inc, as follows (WPPS itself is the Respondent):

18  Panel finds that the Disputed Domain Name has been registered and is being used in
19  bad faith.

51

**Facts of Registrars and ICANN in Collusion to Obstruct Prosecution**

129.   Defendant registrars Tucows, GoDaddy, and Onlinenic accept website registrations by seemingly independent Concealment Services that register themselves, or register non-existent entities, in lieu of the actual website owners they are required by ICANN license to register and identify as public information, thereby obstructing process against pirates of copyrighted materials.

130.   Upon demand by the Plaintiff that they identify the owners of piracy websites and terminate services thereto, the defendants Tucows, GoDaddy, and Onlinenic without exception refused to identify, or to require the Concealment Services they have accepted as registrants to identify, the owners of piracy websites. They communicated to those pirates and Concealment Services the fact that Plaintiff demanded their identification, allowed the pirates time to change registrars, and then claimed to the Plaintiff that they were not the current registrar, in attempts to obstruct prosecution of the pirates. They refused further communication, and upon ICANN complaint, informed ICANN only that they were not the present registrar. ICANN refused to demand the past registrant information.

131.   Defendant ICANN (Internet Corporation for Assigned Names and Numbers) was created by the NTIA (National Telecommunications and Information Administration), to license website registrars to register website name "domains" and permit public access to domain registration information, including the name and contact information of the registrant (owner of the website name). ICANN claims to accept complaints about the performance of its registrar agents, including the use of rogue Concealment services, non-existent or "nominee" registrants, and other activities of pirates.

132.   Plaintiff has notified ICANN of its responsibility for the criminal conduct of its registrar agents in refusing to identify the owners of crime websites, and has demanded from ICANN the registrant information that its registrar agents refuse to provide (exhibits available).

133.   ICANN has failed to provide any of the information requested, or to demand of its registrar agents the identification of owners of piracy websites, and has acted in collusion with its registrar agents, and in collusion with the criminal activities of crime websites, by allowing its registrar agents (a) to register as the owners of websites both non-existent persons and entities which have no legal existence, such as other websites (exhibits available) or even the same website, (b) to register false physical addresses and non-existent email addresses as the sole contact information of website owners (exhibits available), and (c) to operate, and permit registration by, Concealment services that refuse to respond to demands for identification of website registrants (exhibits available).

134.   ICANN has furthermore engaged in collusion with the criminal activities of piracy website owners and operators, in its responses to Plaintiff complaints via its own website, by (a) claiming ignorance of all but the most recent registrar of piracy websites so as to pretend that the registrar is incorrectly stated, allowing pirates to jump between registrars one step ahead of investigators (exhibits available); (b) refusing to demand, and pretending that it has no way of determining, the website registrant information known to its registrar agents; (c) pretending that complaints are about a subset of the piracy websites listed (exhibits available); (d) pretending not to understand complaints about registrars of Concealment service websites (exhibits available); (e) pretending that complaints do not list correct information even where quoting the correctly made complaints (exhibits available); and (f) placing short time limits on responses as

1    a pretence that it has time-limited responsibilities for honesty (exhibits available).

2    ICANN has thereby knowingly and willfully obstructed prosecution of the

3    criminal website owners, and has made itself a necessary and willful instrument

4    of these piracy operations, and thereby a principal in these criminal activities.

5    135.   By providing an internal complaint procedure for copyright holders, ICANN

6         has knowingly established and operated a means of advance warning of pirates,

7         allowing them to change registrars, website names, and ownership entities, and

8         to expatriate and launder the profits of piracy, thereby facilitating piracy and

9         making civil or criminal action under seal a necessity prior to any public

10        complaint process, and preventing most copyright holders from obtaining

11        compensation for damages from internet copyright infringements.

12   **Summary of Fact**

13   136.   These facts establish a pattern of willful theft and sale of copyrighted

14        intellectual property by defendant groups A and B in collusion with defendant

15        groups G, H, and I, and in collusion with other registrars and with ICANN. The

16        defendants have for years operated elaborate networks of stolen property sales

17        websites structured to obscure the relationship between marketing and sales

18        websites, have maintained concealment services and false website registrations

19        to conceal ownership of the piracy websites, and have maintained elaborate

20        structures of interlocked foreign shell corporations and offices in foreign fraud

21        venues, and have frequently shifted the relationships between these websites,

22        registrars, corporations, and owners, so as to conceal their relationship to the

23        piracy websites and to obstruct prosecution.

24   137.   The defendants made no effort to obtain permission to copy and sell the

25        subject work, and refused to respond to notices to cease and desist. They are

26        *principals* in the first degree by commission, solicitation, protection, and

1    ratification, and are accessories before and after the fact, in these grave torts and
2    crimes committed by themselves, their agents, and employees, against the
3    Plaintiff, with the intent and effect of seizing the property of the Plaintiff and
4    selling it for personal gain, and interfering with the business of the Plaintiff,
5    causing him the loss of income of more than four years of his professional work,
6    and proceeds of its sale.

7    138.   The acts of defendant groups A and B were clearly made with knowledge and
8    *intent* to unlawfully obtain, copy, and sell the subject property of the Plaintiff,
9    and to deny him the proceeds of its sale for their personal gain, to solicit and
10   ratify the collusion of defendant groups G, H, and I against the Plaintiff, and to
11   injure the Plaintiff financially.

12   139.   The defendants have persisted in these unlawful acts with full knowledge of
13   the rights violated and the injury done.

14   140.   Every such act of the defendants has been without the consent, against the
15   will, and in violation of rights of the plaintiff, and has injured him in the income
16   of his intellectual property.

1  **PETITION FOR RELIEF**

2  **Just Compensation**

3  141.  The Plaintiff respectfully petitions this Court for compensation for damages

4      by taking of his property and destruction of his substantial effort and investment

5      to produce the subject property, and his loss of substantially greater income from

6      sales. See *Memorandum of Law* section Damages.

7  142.  Having spent four years of professional work and having made substantial

8      investments in the planning, studying, preparation, writing, editing, reviewing, re-

9      editing, copy editing, print preparation, copyrighting, printing, transportation,

10     storage, extensive marketing, review and contest preparation, and sales

11     preparation of his 550 page novel *The National Memorial*, and another year in

12     researching unlawful sales thereof and in defending his right to proceeds thereof,

13     Plaintiff demands from the defendants substantial compensation, exemplary

14     punitive damages, and such injunctive relief and criminal penalties as this court

15     may deem sufficient to discourage such piratical operations.

16  **Demand of Plaintiff**

17  143.  As established by the above facts and exhibits, and argued fully in the

18     Memorandum of Law, the defendants have willfully committed both civil and

19     criminal infringement of copyright, and have committed racketeering by creating

20     and hiding infringing websites and their ownership and proceeds, with the intent

21     and effect of theft of millions of dollars of intellectual property without recourse

22     by the vast majority of its owners, and are liable for triple compensation of

23     damages, or the statutory limit of damages for each infringing copy.

144.    The Plaintiff therefore demands damages of three times the sum of his
estimated losses due to the unlawful infringements by the defendants, as detailed
in the Memorandum of Law (best estimate $712,137 as of August 15, 2016 plus
$925,520 until estimated judgment 12/31/2017) or $4,912,971, plus expenses of
investigation, prosecution, and collection.

145.    The Plaintiff suggests the assessment of statutory punitive damages, because
the defendants are unlawfully offering the work of many other writers, musicians,
and video producers, most of whom cannot prosecute, and cannot readily be
assembled for a class action suit. Punitive damages may reach the statutory
damage limit of $150,000 per infringing copy, times the 40,208 copies of the
subject work admitted to have been unlawfully distributed, or $6,031,200,000,
which does not substantially limit this court in awarding exemplary punitive
damages. This may discourage future piracy operations, and thereby bring relief
to many more victims. The Plaintiff agrees to charitable donation of all punitive
damages in excess of his own triple damages.

146.    The Plaintiff suggests injunctive relief prohibiting the defendants, or any of
their employees, from engaging in future electronic or other sales or transfers of
copyrighted material without verified permission from each copyright holder.

147.    Plaintiff further demands costs of prosecution at the rate of $140,000 annually
from 8/1/2016, the commencement of intensive research on the defendants' illicit
sales, until the date of final settlement, plus all direct expenses of prosecution.

148.    The damage award is subject to capital gains tax payable by Plaintiff, which if
it exceeds his income tax rate, must be added to the damages so that the net loss
is compensated. An order shall be provided with appropriate detail.

1 **OATH**

2   I, the undersigned Plaintiff John S. Barth do hereby certify under penalty of

3 perjury that all facts herein stated are true and correct to the best of my knowledge

4 and belief.

5 Date: _1/6/17_                              _John S. Barth_

6                                              John S. Barth, Plaintiff, pro se

7 **Certificate**

8   The above-named John S. Barth appeared before me and stated that the

9 foregoing document is his free act and deed.

10 Before me

11 _____              _____

12   Notary Public                       State of Florida, County of ~~Sarasota~~ MANATEE

ALICIA E. ZAPPALA
Notary Public, State of Florida
Commission # FF 52097
My comm. expires Sept. 8, 2017